**Charles BRIDGES, Appellant,**

v.

**Sharon Pratt KELLY, et al., Appellees.**

**No. 95–7038.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 22, 1996.

Decided May 31, 1996.

Charles Bridges, appearing pro se, argued the cause and filed the briefs for appellant.

Martin B. White, Assistant Corporation Counsel, argued the cause for appellees, with whom Charles F. Ruff, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Lutz A. Prager, Assistant Deputy Corporation Counsel, were on the brief. Garland Pinkston, Jr., Principal Deputy Corporation Counsel, entered an appearance.

Before EDWARDS, Chief Judge, WALD and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge EDWARDS.

HARRY T. EDWARDS, Chief Judge:

Appellant Charles Bridges was terminated from his position as an attorney-advisor in the District of Columbia's Department of Administrative Services ("DAS") pursuant to a 1993 reduction-in-force ("RIF") action. Appellant brought suit in federal court against the District of Columbia ("D.C." or "the District") and various D.C. officials, alleging that his 1993 termination was the last in a series of actions taken against him in retaliation for his filing of a lawsuit challenging a 1991 RIF notice that was canceled before it took effect. In his complaint, which alleges violations of rights protected under, *inter alia,* 42 U.S.C.

§ 1983 (1994), the Veterans Reemployment Act, 38 U.S.C. § 2021 (1988) ("VRA"), and the United States Constitution, appellant requests reinstatement with associated benefits, a total of $8 million in compensatory damages, and a total of $20 million in punitive damages.

Prior to filing his action in District Court, appellant exercised his right under D.C. law to appeal his 1993 termination to the District's Office of Employee Appeals ("OEA"). Although this administrative appeal was filed on or about August 13, 1993, and the statutory deadlines for OEA action have long passed, appellant's OEA claim has not yet been adjudicated and remains pending before the local agency. On the assumption that the matters in issue in the federal court action could be pursued before the OEA, the District Court applied the doctrine of equitable restraint, set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, and dismissed appellant's complaint.

Appellees concede in their brief before this court that a *Younger*-grounded dismissal was improper as to certain of appellant's claims, but not as to all. Brief for Appellees at 6, 8, 14. We find that, even assuming, *arguendo,* that the *Younger* doctrine may be employed in lawsuits involving the District of Columbia, *Younger* clearly has no application here. This is because, in the instant case, appellant has raised federal claims and sought relief that are beyond the compass of the D.C. administrative/judicial system. In particular, it is conceded that appellant could not receive from the D.C. system the full panoply of remedies available to him from the District Court in connection with his federal claims. On this record, we hold that there was no basis for a dismissal of appellant's lawsuit pursuant to *Younger.* Accordingly, we reverse and remand for further proceedings.[1]

---

1. We find no merit in appellant's claim of bias on the part of the District Court, and we reject his request to reassign this case to another judge.

  In addition, apart from a warning, which we hereby issue, we decline to take further disciplinary action against appellees' counsel for his fail-

ure to comply with filing deadlines established by the court. Although counsel's conduct was careless, it was not attributable to any willful conduct and it caused no prejudice to appellant, so no sanction other than a warning is warranted in this instance.

## I. Background

### A. *The Complaint Allegations and Prayer for Relief*

According to his complaint, appellant held a position of attorney-advisor and functioned as a claims officer in the District's DAS for five years prior to his termination in 1993. Appellant's troubles with the District began in the Fall of 1991, shortly after his return from active service with the United States Army Reserves in the Persian Gulf War. By letter dated October 1, 1991, the District notified appellant that, pursuant to a RIF being undertaken pursuant to the District of Columbia Government Comprehensive Merit Personnel Act of 1978 Emergency Amendment Act of 1991, 38 D.C.Reg. 4935 (1991), he would be terminated effective November 8, 1991.

Appellant filed a lawsuit challenging the separation notice as violative of, *inter alia,* his retention rights under the VRA, which mandates that reservists returning to their old jobs following a period of active duty cannot be discharged, except for cause, for a period of one year. *See* 38 U.S.C. §§ 2021(b)(1) & 2024(b) (1988). The complaint states that the United States Department of Labor ("DOL") also intervened on appellant's behalf in contesting the separation notice. Complaint ¶ 5, *reprinted in* Appellant's Appendix ("App.") Section B; *see also* 38 U.S.C. § 2025 (1988) (The VRA directs DOL to assist veterans in resuming their former positions upon returning from active duty.). In recognition of appellant's retention protection, the District canceled the October 1 separation notice on October 28, 1991.[2]

Appellant alleges in his complaint that, following the District's rescission of the October 1991 separation notice, his supervisors "subjected [him] to a continuous pattern of harassment for nearly two years ... in retaliation for [his] law suit" challenging the separation notice. Complaint ¶¶ 5, 17, *reprinted in* App. Section B. According to appellant, this harassment entailed a variety of adverse personnel actions and culminated in the issuance of a second RIF-based separation notice on June 18, 1993, pursuant to which appellant was terminated from employment with the District on July 23, 1993.

Appellant exercised his right under D.C. law to appeal his 1993 termination to the District's OEA,[3] with a subsequent right to judicial review in the D.C. Superior Court.[4] Section 1–606.3 of the D.C.Code provides that the OEA Hearing Examiner shall ren-

---

2. An appeal of appellant's lawsuit challenging the 1991 RIF action remained pending before this court until April 26, 1994, when the case was dismissed as moot, because "[a]ppellant's employment with the D.C. government was never terminated, and appellant failed to amend his complaint to allege any injury resulting from mere notice of termination." *Bridges v. District of Columbia,* No. 92–7224 (D.C.Cir.1994) ("Judgment").

3. The D.C. Court of Appeals has described the creation and role of the OEA as follows:

> The Merit Personnel Act was enacted to establish a comprehensive merit-based personnel system for employees of the District of Columbia. In order to ensure compliance with the merit system principles set forth in the Act, its drafters created the OEA, a quasi-judicial body empowered to review final agency decisions affecting, *inter alia,* performance ratings, adverse actions, and employee grievances. Although the Act does not define the standards by which the OEA is to review these decisions, it is self-evident from both the statute and its legislative history that the OEA is not to substitute its judgment for that of the agency and that its role ... is simply to ensure that mana-

gerial discretion has been legitimately invoked and properly exercised. Indeed, the OEA's own regulations state that it will uphold an agency decision unless (1) it is unsupported by substantial evidence, (2) there was harmful procedural error, or (3) it was not in accordance with law or applicable regulations.

> *Stokes v. District of Columbia,* 502 A.2d 1006, 1009–10 (D.C.1985) (internal quotation and citations omitted).

4. D.C.Code Ann. § 1–606.3 (1992) states, in part, as follows:

> (a) Any employee may appeal a final agency decision affecting ... a reduction-in-force ... to the Office [of Employee Appeals] upon the record and under such other rules and regulations which the Office may issue.

> \*   \*   \*   \*   \*   \*

> (d) Any employee or agency may appeal the decision of the Office to the Superior Court of the District of Columbia for a review of the record and such Court may affirm, reverse, remove, or modify such decision, or take any other appropriate action the Court may deem necessary.

der a decision "within 120 days, excluding Saturdays, Sundays, and legal holidays, from the date of the appellant's filing of the appeal with the [OEA]," the only exception being that the OEA "may promulgate rules to allow a Hearing Examiner a reasonable extension of time if extraordinary circumstances dictate that an appeal cannot be decided within the 120–day period." D.C.CODE ANN. § 1–606.3(c) (1992). However, although appellant filed his administrative appeal on or about August 13, 1993, Brief of the Appellant at 25, and although the OEA apparently failed to extend the statutory time frame for adjudication of the case, *id.* at 16, appellant's OEA appeal has not yet been adjudicated and remains pending before the OEA.[5] Appellant alleges in his complaint that his OEA appeal "has been unreasonably delayed beyond the required statutory 120 day time frame for adjudication, depriving [appellant] of due process of law[ ]. OEA has failed to address three ... consecutive defaults by the District in that case; and the administrative process does not provide complete and adequate relief to [appellant]...." Complaint ¶ 5, *reprinted in* App. Section B.

In Counts One through Three, the complaint further alleges that the manner in which the District effected appellant's 1993 termination, the pattern of harassment preceding the termination, and the District's motive for subjecting appellant to termination all represent conduct actionable under 42 U.S.C. § 1983. Complaint ¶¶ 10–42, *reprinted in* App. Section B. In particular, appellant alleges that his discharge was "a sham, an illegal scheme/device to oust him from his job ... in obvious reprisal for a pending lawsuit and subsequent appeal, as well as for other illegal reasons." *Id.* ¶ 42, *reprinted in* App. Section B. Finally, Count

Four of the complaint alleges a section 1983 claim for intentional and/or negligent infliction of emotional distress. *Id.* ¶¶ 43–44, *reprinted in* App. Section B.

Appellant's prayer for relief states as follows:

(1) All compensatory damages in the sum of *$8,000,000* [$2 million for each of the four counts of the complaint], or as the Court believes just and due, and it is requested that the court grant [appellant] reinstatement to his job with full seniority rights, back pay with accumulated raises, restoration of annual leave, accumulated sick leave, pension entitlements, and other benefits [appellant] is entitled to by his employment and damages for humiliation, pain, suffering, embarrassment, loss of reputation, nervous condition, the intentional and/or negligent infliction of mental and emotional distress, anxiety, and harassment.

(2) Punitive Damages in the amount of *$20,000.00* [intended to read "*$20,000,000.00*"[6]].

(3) The cost of this action and [appellant's] expenses incurred in this matter, including reasonable attorney fees. (42 U.S.C. § 1988)

(4) And such other and further relief as this court may deem just and proper in law and equity.

*Id.* at 19–20, *reprinted in* App. Section B.

### B. *Proceedings Before the District Court*

Appellant filed his complaint before the District Court on July 15, 1994. One week later, on July 22, 1994, the District Court ordered Corporation Counsel for the District

---

5. At oral argument, appellant suggested that he had received authorization from the D.C. Court of Appeals to withdraw his OEA appeal and that he had in fact voluntarily dismissed the agency case during the pendency of his appeal before this court. Our review of the parties' post-argument filings, however, indicates that the OEA has yet to rule on appellant's request for voluntary dismissal, and, as near as we can tell, the D.C. Court of Appeals has offered no opinion on the matter other than to dismiss for a lack of jurisdiction appellant's petition for a writ of mandamus ordering the OEA to rule on his pending

motions. Thus, appellant's administrative appeal is apparently still pending before the OEA.

6. Two weeks after filing his complaint, appellant submitted a notice of typographical errors stating, in part, as follows: "Page 20, Item 2, DAMAGES, the cumulative damages total from Counts 1–4 should read *$20,000,000.00* in lieu of $20,000.00." PRAECIPE ¶ 2. This correction was made in accordance with the $5 million appellant requested as punitive damages for each of the four counts of the complaint.

to respond by August 22, 1994, regarding whether the complaint should be dismissed. On August 22, Corporation Counsel filed Defendants' Motion to Dismiss the Complaint, arguing that, in light of the pending OEA appeal concerning appellant's termination, the District Court should dismiss appellant's complaint both under the *Younger* doctrine of equitable restraint and for failure to exhaust local administrative remedies. In support of its dismissal arguments, Corporation Counsel characterized appellant's complaint as follows:

> In essence, [appellant] merely seeks to have this Court review his employment termination from the District. While the complaint attempts to set forth allegations to give rise to federal jurisdiction under 42 U.S.C. § 1983, the complaint sets forth allegations which amount to no more than [appellant] seeking to have this Court take the place of the OEA and its authority to review [appellant's] termination.

Memorandum of Points and Authorities in Support of Defendant District of Columbia's Motion to Dismiss the Complaint at 5.

At a scheduled status hearing held on January 17, 1995, the trial judge decided to hear oral argument from the parties concerning the issues presented by the pending motion to dismiss. Corporation Counsel, in addition to the equitable restraint and exhaustion arguments raised in its filings, also presented yet a third ground for dismissing appellant's complaint. According to Corporation Counsel, appellant's federal constitutional claims boiled down to due process arguments, which could be asserted before the OEA (and on appeal to the D.C. Superior Court) along with "any other rights that [appellant] may wish to bring up." Transcript of Status Hearing ("Tr.") at 5, *reprinted in* App. Section C. Thus, Corporation Counsel argued that appellant had "not been deprived of any substantive due process rights;" rather, according to Corporation Counsel, appellant already was pursuing under the D.C. administrative/judicial system "all the rights that he is entitled to." *Id.*

At the conclusion of the parties' arguments, the trial judge stated as follows:

Now, the best thing that I can do for you, Mr. Bridges, is this. I am going to dismiss these claims in view of the pendency of the claim before the District of Columbia Board, pursuant to the Comprehensive Merit Personnel Act, without prejudice if you lose, to assertion of these claims in the Superior Court.

In other words, I am not going to be the Judge that throws you out of court. I am not going to do that to a lawyer. I am just not going to do it. I could dismiss it with prejudice, I think, but I am not going to do that. I am going to do you a favor and dismiss it without prejudice after this administrative adjudication takes place, so that you will not be impaired.

I have written a brief memorandum to that effect.

*Id.* at 11, *reprinted in* App. Section C.

On January 18, 1995, the District Court filed a four-page Order disposing of the case. *Bridges v. Kelly,* Civ. Action No. 94–1559 (D.D.C. Jan. 18, 1995) ("Order"), *reprinted in* App. Section D. The court accepted the view espoused by Corporation Counsel that, "[a]lthough [appellant] has filed several claims under 42 U.S.C. § 1983, at bottom [appellant] seeks reinstatement of his former position." Order at 2, *reprinted in* App. Section D. Without mention of Corporation Counsel's arguments regarding exhaustion of administrative remedies or the due process nature of the complaint's federal allegations, the District Court proceeded to apply the *Younger* doctrine of equitable restraint to dismiss appellant's complaint based on the following findings:

First, there is an ongoing state proceeding because [appellant's] appeal of his employment termination is now pending before the [OEA]. By statute, the OEA is the proper entity to hear such an appeal. *See* D.C.Code § 1–606.3(d).

Second, [appellant's] assertion of improper removal from his employment position pursuant to the District's official reduction-in-force implicates an important state interest, due to the District's need to manage and supervise its public employee labor force.

Last, there is an adequate opportunity for [appellant] to raise federal questions in the pending administrative action. Pursuant to the statute that [appellant's] administrative action is now proceeding under, a public employee has the right to judicial review of an adverse ruling by the D.C.Superior Court, then the D.C.Court of Appeals, and if necessary, the United States Supreme Court. *See* D.C.Code, §§ 1–606.3(d), 11–102 and 11–721.

*Id.* at 3–4, *reprinted in* App. Section D. The court dismissed appellant's complaint "without prejudice, from the dockets of this Court, subject to [appellant's] alleged right to later bring an appropriate claim in the District of Columbia Superior Court." *Id.* at 4, *reprinted in* App. Section D.[7]

## II. ANALYSIS

"[T]he doctrine of *Younger v. Harris* ... and its progeny restrains federal courts from interfering in ongoing state judicial proceedings." *District Properties Assocs. v. District of Columbia,* 743 F.2d 21, 27 (D.C.Cir.1984). The Supreme Court's espousal of the restraint doctrine "was based partly on traditional principles of equity, but rested primarily on the 'even more vital consideration' of comity." *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 364, 109 S.Ct. 2506, 2516, 105 L.Ed.2d 298 (1989) ("*NOPSI* ") (quoting *Younger,* 401 U.S. at 44, 91 S.Ct. at 750–51) (citation omitted); *see also Hoai v. Sun Ref. & Mktg. Co.,* 866 F.2d 1515, 1517 (D.C.Cir.1989) ("Under the *Younger* ... doctrine of ... equitable restraint, a federal court may dismiss an action when there is a direct conflict between the exercise of federal and state jurisdiction and considerations of comity and federalism dictate that the federal court should defer to the state proceedings.").

■ Nevertheless, because of "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976), the appropriateness of refraining "from the exercise of federal jurisdiction is the exception, not the rule," *id.* at 813, 96 S.Ct. at 1244; *see also Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 2215–16, 119 L.Ed.2d 468 (1992) (The Court observed that doctrines permitting federal courts to abstain from exercising their jurisdiction "rarely should be invoked."); *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244 (" '[A] doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " (quoting

---

7. The District Court referred to its dismissal of appellant's complaint as an application of the "abstention doctrine" set forth in *Younger v. Harris.* Order at 2–3, *reprinted in* App. Section D. However, in the interest of clarity, this opinion will refer to the doctrine enunciated in *Younger v. Harris* as the doctrine of "equitable restraint," pursuant to which a federal case is dismissed (*i.e.,* removed from the federal court's jurisdiction) on considerations of comity and federalism; equitable restraint is distinct from the "abstention" doctrine set forth in *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), which does not result in dismissal, but rather serves to delay federal adjudication while a local forum resolves pertinent issues of local law. *See Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973) ("Unlike those situations where a federal court merely abstains from decision on federal questions until the resolution of underlying or related state law issues ... *Younger v. Harris* contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." (footnote omitted)); *Zalman v. Arm-*

strong, 802 F.2d 199, 207 n. 11 (6th Cir.1986) ("*Younger* ... requires dismissal of the complaint rather than retention of jurisdiction as is the case under *Pullman* abstention."); see also *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 477–81, 97 S.Ct. 1898, 1902–05, 52 L.Ed.2d 513 (1977), for a discussion of the differing considerations underlying *Younger* equitable restraint and *Pullman* abstention. *See also Hoai v. Sun Ref. & Mktg. Co.,* 866 F.2d 1515 (D.C.Cir. 1989).

Despite the District Court's curious statement that appellant's complaint was being dismissed "without prejudice," it seems clear that the intention of the court and the understanding of the parties was that appellant's complaint was being fully removed from the District Court's jurisdiction pursuant to the teachings of *Younger* and its progeny. We assume that what the District Court meant to say is that, in dismissing, the federal court was rendering no judgment on the merits. In any event, this opinion will analyze the court's dismissal of appellant's complaint as an application of the *Younger* doctrine of equitable restraint.

*County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188, 79 S.Ct. 1060, 1062, 3 L.Ed.2d 1163 (1959))). Thus, the Supreme Court has made clear that the *Younger* doctrine must be applied in accordance with "the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *NOPSI,* 491 U.S. at 368, 109 S.Ct. at 2518. We find no such circumstances present in the instant case and therefore reverse the District Court's ruling that *Younger* requires dismissal of appellant's federal complaint.[8]

■ For the *Younger* doctrine to apply, a rigid three-prong test must be satisfied: first, a federal court may dismiss a federal claim only when there are ongoing state proceedings that are judicial in nature; second, the state proceedings must implicate important state interests; third, the proceedings must afford an adequate opportunity in which to raise the federal claims.

*Hoai,* 866 F.2d at 1518 (citing *Middlesex County Ethics Comm. v. Garden State Bar*

*Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982)). We note at the outset that appellees concede in their brief that it was error for the trial court to apply *Younger* to appellant's claims regarding "retaliatory" actions *other than* appellant's actual employment termination, because the record is inadequate to establish that the other adverse personnel actions allegedly taken against appellant are the subject of any ongoing District proceeding, as required under the first prong of *Younger* analysis. *See* Brief for Appellees at 6, 8, 14. However, we also find that dismissal was inappropriate as to appellant's termination-related claims as well.

■ We agree with appellees that the OEA appeal process, with the attendant review in the D.C. Superior Court and D.C. Court of Appeals, is judicial in nature,[9] and that the District has an important interest in its own ability to implement reductions in the size of its workforce. However, we find that the District Court erred in concluding that

8. Because we find the facts of this case outside the scope of *Younger's* equitable restraint doctrine, we need not, and do not, confront the still-open question avoided by previous panels of this court regarding the extent to which *Younger* applies at all in situations where the ongoing, non-federal proceeding is before an arm of the District of Columbia. In *LaShawn A. v. Kelly,* 990 F.2d 1319, 1322 (D.C.Cir.1993), *cert. denied,* ―― U.S. ――, 114 S.Ct. 691, 126 L.Ed.2d 659 (1994), we recently stated as follows:

This Court has never decided whether the District of Columbia is a state for *Younger* abstention purposes. Instead, every time the question has arisen, we have assumed that the doctrine applies to the District and nonetheless determined, in light of the facts of each particular case, that *Younger* abstention has not been appropriate. *See, e.g., District Properties Assocs. v. Dist. of Columbia,* 743 F.2d 21, 28 n. 4 (D.C.Cir.1984); *Family Div. Trial Lawyers v. Moultrie,* 725 F.2d 695, 701 n. 7 (D.C.Cir. 1984). In the present case, we again find it unnecessary to reach the issue, because *Younger* abstention would not be required here even if the doctrine applied to the District with full force.

*But cf. Hoai,* 866 F.2d at 1517, 1519 (In a case where the District Court stayed proceedings in an attempt to avoid "questions arguably posed by *Younger,*" the court found that an ongoing action in D.C.Superior Court satisfied the "ongoing state proceedings" prong of *Younger* analysis.). Like the panels before us, we merely assume,

*arguendo,* but do not decide, that the *Younger* doctrine applies to the District.

9. On the other hand, we are not at all certain that the OEA proceeding in this case can be considered "ongoing" for *Younger* purposes. Appellant makes a powerful argument that the District agency has defaulted on its statutory directive to issue a decision "within 120 days, excluding Saturdays, Sundays, and legal holidays, from the date of the appellant's filing of the appeal with the Office." D.C.Code Ann. § 1-606.3(c) (1992). Far from being resolved within the 120-day period mandated by the statute, appellant's OEA appeal has languished for almost three years. According to appellant, and the District has stated nothing to the contrary, OEA did not even assign a judge until a year after appellant filed his administrative appeal, dispositive motions filed before the agency years ago still have not been ruled upon, and the agency never exercised its statutory option to promulgate rules allowing "a reasonable extension of time if extraordinary circumstances dictate that an appeal cannot be decided within the 120-day period." *Id.; see also* Brief of the Appellant at 25; Reply Brief for Appellant at 11–12. Under these circumstances, it is questionable whether a *Younger*-based dismissal of appellant's federal complaint was appropriate because there simply is no "ongoing" local proceeding. However, we need not decide this issue, because we find the inadequacy of the relief available to appellant through the D.C. system to be a more apparent basis for reversal.

the OEA proceeding, together with the availability of judicial review in the D.C. courts, presents an adequate forum in which appellant can fully and fairly pursue his federal claims. The most obvious basis for our finding on this issue, and the one on which we rest, is the inability of the D.C. system to grant appellant the full relief requested in connection with his federal claims.

Contrary to the District Court's assertion, appellant seeks much more than simply reinstatement to his former position, with associated back pay and benefits. In connection with the termination-related claims stated in Counts One and Three of his complaint, appellant seeks a total of $4 million in compensatory damages and $10 million in punitive damages; and appellant's 1993 termination is part of the basis for Count Four's allegation of intentional and/or negligent infliction of emotional distress, pursuant to which appellant seeks an additional $2 million in compensatory damages and $5 million in punitives. *See* Complaint at 10–11, 15–18, *reprinted in* App. Section B. We find nothing in the D.C.Code, and appellees cite nothing, authorizing the OEA to grant relief such as punitive damages and compensatory damages (in excess of back pay and benefits) for harms flowing from tortious conduct.[10] Nor have we found anything suggesting that, on appeal from the OEA, the D.C. Superior Court or Court of Appeals could entertain requests for relief that were not cognizable before the OEA.[11] Indeed, counsel for the District con-

ceded at oral argument that the OEA and reviewing D.C. courts could not provide appellant the full relief he seeks under his section 1983 claims.

Following our decision in *District Properties,* we hold here that the inability of the D.C. system to afford appellant the full relief he seeks in connection with his federal claims is sufficient to preclude dismissal under *Younger.* In `District Properties*—where appellant landlords challenged the operation of the District agency responsible for administering local rent control laws—we observed that the landlords' charges, if proven true, might well entitle them "to broader ... forms of relief" than were available from the agency or under the judicial review procedures authorized by D.C. law. 743 F.2d at 26. Therefore, we rejected the District Court's application of *Younger* equitable restraint:

> *Younger* principles do not require dismissal of appellants' complaint, for there are no ongoing proceedings in the local [system] in which appellants could raise their federal ... claims.... [A]ppellants' claims are in a number of respects considerably broader than the claims they were able to assert in the proceedings in local courts or before [the agency] itself. *And the relief they seek in this case is far broader than that which the local court could have granted in the administrative review proceeding.* Therefore, the District Court erred in its ... holding that this case

---

10. The D.C.Code simply states that "[i]n any appeal taken pursuant to this section [including an appeal of a final agency decision affecting a reduction-in-force], the [OEA] shall review the record and uphold, reverse, or modify the decision of the agency." D.C.CODE ANN. § 1–606.3(a), (b) (1992). Although there is case law to support appellees' contention that the OEA is empowered to order reinstatement with back pay and some associated benefits, Brief for Appellees at 11; *see also District of Columbia v. Thompson,* 593 A.2d 621, 635 & n.25 (D.C.) (The court observed that an employee who files an appeal before the OEA is "able to seek reinstatement, and perhaps back pay."), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991), such relief is far narrower than the remedies appellant requests from the District Court.

11. To the contrary, it appears that D.C. courts reviewing decisions of the OEA apply the "arbitrary and capricious" standard typical for judi-

cial review of agency action. *See Office of the Dist. of Columbia Controller v. Frost,* 638 A.2d 657, 660 (D.C.1994) ("[W]e examine the agency record to determine whether there is substantial evidence to support OEA's findings of fact, or whether OEA's action was arbitrary, capricious, or an abuse of discretion." (internal quotation omitted)). It would seem that, as a necessary corollary of this standard of review, a D.C. court hearing an appeal from the OEA would not entertain claims and arguments not raised, or not eligible to be raised, before the agency. *Cf. Hessey v. Burden,* 615 A.2d 562, 568 & n. 9 (D.C. 1992) (The court noted that the language of section 1–606.3(d) authorizing "appeal" of an OEA decision to the Superior Court was to be contrasted with the language of a different D.C.Code section deemed to authorize an "original proceeding" in which the court could exercise *de novo* review and address matters not considered by the agency.).

should be dismissed on *Younger* grounds. There being no pending state ... proceedings that would have afforded appellants a full and fair opportunity to litigate their [federal] claims, the predicate for *Younger* abstention was simply absent in this case.

*Id.* at 28 (emphasis added). The same reasoning applies here. Accordingly, we reverse the District Court's decision dismissing appellant's complaint on grounds of equitable restraint.

### III. CONCLUSION

For the reasons set forth above, the District Court's dismissal of appellant's complaint is reversed and the case remanded for further proceedings consistent with this opinion.

*So ordered.*