**Loren KROPAT, Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION and U.S. Department of Transportation, Respondents.**

No. 98–1186.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 16, 1998.

Decided Dec. 15, 1998.

William L. Bransford argued the cause and filed the briefs for petitioner.

Daniel Kaplan, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the brief were Frank W. Hunger, Assistant Attorney General, Wilma A. Lewis, U.S. Attorney, and Alfred R. Mollin, Attorney, U.S. Department of Justice.

Before: EDWARDS, Chief Judge, SILBERMAN and TATEL, Circuit Judges.

HARRY T. EDWARDS, Chief Judge:

The Federal Aviation Administration ("FAA") suspended petitioner Loren Kropat for thirty days without pay for disruptive and abusive conduct on the job. Kropat protested this disciplinary action and his complaint culminated in an arbitration hearing. The arbitration panel dismissed one of the charges against Kropat and reduced his suspension from thirty to ten days.

Although Kropat was afforded substantial rights to prehearing discovery (*e.g.*, a statement of the charges against him, access to materials related to his case, a right to representation, witness lists, and witness statements), he claims that he was denied procedural due process because the FAA's Personnel Management System ("System") states that "[t]here will be no discovery for either side." Kropat does not contend that he was completely denied discovery; rather, he claims that he was improperly denied a right to interview or depose adverse witnesses prior to the hearing. Because Kropat cannot demonstrate how his inability to depose the FAA's witnesses amounted to a due process violation, particularly in light of the myriad other procedural protections afforded him, we reject his due process claim.

Kropat also claims that the asserted lack of discovery violated his right to equal protection. This claim rests on the fact that employees who are covered by collective bargaining agreements are afforded different, and allegedly greater, procedural protections than persons like Kropat, who are not covered by any collective bargaining agreement. We reject this claim as well, for there is obviously a rational basis for providing unionized employees with the protections guaranteed by their collective bargaining agreements. Kropat had the protections of the FAA's Personnel Management System, which fully satisfies the requirements of procedural due process; he was entitled to nothing more.

## I. BACKGROUND

### A. The FAA Personnel Management System

FAA personnel disciplinary actions were formerly governed by the provisions of Title 5 of the U.S.Code. In 1995, however, Congress directed the FAA to develop and implement a new personnel management system that would supplant the provisions of Title 5. *See* Department of Transportation and Related Agencies Appropriations Act, 1996, Pub.L. No. 104–50, § 347, 109 Stat. 436, 460 (1995). The FAA responded to this charge by creating the FAA Personnel Management System. Chapter III of the System governs the FAA's disciplinary procedures, which apply to all FAA employees who are not otherwise protected by a collective bargaining agreement. *See* Joint Appendix ("J.A.") A14–A27.

Under the System, "[s]upervisors are responsible for determining if corrective disciplinary action is warranted." *Id.* at A16. An employee must be notified at least 15 days in advance of any proposed suspension, and, in

particular, must be informed of (i) "the specific reason(s) for the proposed action in sufficient detail for the employee to make a reply"; (ii) the right to make an oral or written reply within 15 days; (iii) the right to representation during the reply period; and (iv) the right to "review all of the material relied upon to support the proposed action and copies unless otherwise prohibited by law." *Id.* at A17–A18. In presenting a reply, the employee may "furnish affidavits and other documentation . . . [and] will be given up to 16 hours of excused absence to review the material relied upon and to prepare any reply to a proposed suspension." *Id.* at A19. After receiving the employee's reply (or, if no reply is made, within twenty-five days of the original notification), the deciding official must issue a final decision. *See id.* at A18. The final decision must contain, *inter alia*, "a statement of which charge(s) and/or reason(s) were sustained and which were not," as well as notification of the employee's right to appeal any suspension of more than fourteen days. *Id.* at A19–A20.

A suspended employee may then invoke the System's appeals procedure, entitled "Guaranteed Fair Treatment," by submitting a written appeal to the "next level above the deciding official" within ten days of receiving the final decision. *Id.* at A24. Once an appeal has been filed, the FAA must designate an appellate panel, comprised of a "partisan" for each side and an arbitrator. *See id.* The System provides that "[t]here will be no discovery for either side but the parties shall exchange documents and witness lists ten days before the hearing." *Id.* at A25. The parties may be represented at the hearing, and are responsible for securing their own witnesses. *See id.*

The panel must issue a written decision. *See id.* The panel has the authority to mitigate the penalty in a case involving the employee's conduct, and may award back pay. *See id.* at A25–A26. Decisions of the panel are issued as final orders of the FAA Administrator, and are reviewable in this court, or in the U.S. Court of Appeals for the circuit in which the employee resides. *See id.* at A26.

### B. Factual History

Prior to 1996, Loren Kropat had worked at the FAA in various capacities for eighteen years without incident. During the summer and fall of 1996, however, he engaged in disruptive and threatening conduct on the job, for which he received a three-day suspension. *See id.* at A59–A62.

In February 1997, Kropat was allegedly involved in several more disruptive incidents. On March 17, 1997, his supervisor, Janis Hooten, sent him a notice proposing that he be suspended for thirty days and advising him of his right to make a written or oral reply. *See id.* at A64–A67. The notice provided a detailed explanation of three specific charges of "disruptive," "threatening," and "abusive" behavior, each of which related to a separate incident. *Id.* at A64. The notice was accompanied by nine documents, including the written statements of his co-workers, attesting to his improper behavior. *See id.* at A68–A79. On March 28, 1997, Kropat responded by letter to the deciding official, Robert Cook, claiming that the proposed suspension notice "includes false, unsubstantiated and insupportable allegations." *Id.* at A80. On May 1, 1997, Cook issued a final decision, which explained that he had conducted an independent investigation and concluded that the thirty day suspension was warranted. *See id.* at A81–A85. The final decision apprised Kropat of his right to appeal via the "Guaranteed Fair Treatment" appeals procedure. *See id.* at A82. Kropat was suspended from May 5 to June 18, 1997. *See id.* at A86–A87.

On May 9, 1997, Kropat filed an appeal of the final decision, in which he again denied the charges. *See id.* at A88–A94. The parties exchanged witness lists in mid-July, *see id.* at A97–A104, and on July 28, the FAA's representative, Michael Herlihy, offered to meet with Kropat to "define the issues and discuss witnesses, documents, and any procedural matters," *id.* at A103. Kropat never responded to this offer. Kropat did attempt to interview several of the FAA's witnesses prior to the hearing. His attempts were futile, in part because Kropat had been barred from entering FAA premises pending his appeal, *see id.* at A63, and Herlihy appar-

ently had advised the witnesses not to speak with Kropat unless Herlihy was present, *see id.* at A97, A161. However, there is nothing in the record to indicate that Kropat was precluded from talking with witnesses off of FAA premises.

A hearing before the appellate panel was held on July 30, October 27, 28, and 30, 1997. Kropat was represented by counsel on the first day of the hearing, but appeared *pro se* for the remainder. Each side presented witnesses, cross-examined opposing witnesses, and introduced exhibits into evidence. *See, e.g., id.* at A105–A201. At several points during the hearing, Kropat objected that his due process rights had been violated by his inability to interview the FAA's witnesses prior to the hearing. *See, e.g., id.* at A183–A191. However, the neutral arbitrator gave him substantial leeway in his cross-examination of these witnesses, and attempted several times to elicit from Kropat precisely how he was prejudiced by his inability to interview or depose the witnesses. *See id.* Kropat was unable to articulate what prejudice, if any, he had suffered. At the conclusion of the hearing, each side submitted a final brief in lieu of closing argument. *See id.* at A202–A279.

On February 9, 1998, the panel issued an Opinion and Award. *See Kropat v. FAA,* American Arbitration Association Case No. 164870006897 (Feb. 9, 1998), *reprinted in* J.A. A280. The panel discussed the evidence pertaining to each charge, ultimately upholding the first and third charge, but dismissing the second charge. In dismissing the second charge, the panel declined to credit the FAA's key witness with respect to that charge. *See id.* at A294. With respect to the penalty imposed, the panel reduced the suspension from thirty to ten days, and directed the FAA to "make ... [Kropat] whole, for the action it has taken against him in excess of ten days." *Id.* at A300. The FAA's partisan on the panel dissented from the panel's opinion. *See id.* This appeal followed.

## II. ANALYSIS

### A. Due Process

█ Kropat claims that the System's appeals procedure fails to provide employees in his position with the requisite due process. His general contention is that, because the System states that "[t]here will be no discovery for either side," *id.* at A25, suspended employees are unable to effectively respond to the charges against them.

Respondents concede that Kropat had a property interest in his job, and that his suspension constituted a deprivation of that interest, thereby triggering his right to due process under the Fifth Amendment. *See* Brief for the Respondents at 22. The narrow issue on appeal, then, is whether Kropat received the process he was due. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). We hold that he did.

█ First, as a matter of constitutional law, Kropat is simply wrong in suggesting that "formal," pre-hearing discovery, of the sort that might be available under the Federal Rules of Civil Procedure, must be provided to satisfy procedural due process in connection with a post-suspension arbitration proceeding. "Though the required procedures may vary according to the interests at stake in a particular context," *Brock v. Roadway Express, Inc.,* 481 U.S. 252, 261, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987), "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). There is no case law to support the proposition advanced by Kropat.

█ To the contrary, this court has made clear that the Fifth Amendment "only requires that a person receive his 'due' process, not every procedural device that he may claim or desire." *Johnson v. United States,* 628 F.2d 187, 194 (D.C.Cir.1980). In order to determine whether due process is satisfied in a particular case, we employ the familiar *Mathews* test, in which we balance "the nature of the benefit or status of which the individual is being deprived; the need for the government to act efficiently and expeditiously in terminating this type of benefit or

status; and the extent to which the decision-making process would be aided by the presence of the procedural safeguard that the individual seeks." *Id.* (citing *Mathews,* 424 U.S. at 334–35, 96 S.Ct. 893). Here, because both Kropat and the FAA have important interests at stake, our analysis focuses on the last of the three *Mathews* factors—the probable value, in terms of accuracy and efficiency, of requiring the pre-hearing discovery that Kropat seeks.

As a factual matter, Kropat has utterly failed to explain how he was prejudiced by the System's lack of formal discovery, or how such discovery would contribute to the accuracy or efficiency of the adjudication. His only discernible claim of "prejudice" is that he had to take " 'calculated risks' during the cross-examination of agency witnesses for fear of unanticipated testimony." Reply Brief for Petitioner at 16. This claim is unfounded, however, since it is undisputed that he was provided with each witness's statement prior to the hearing, and he was unable to explain to the arbitrator or to this court how he might have benefitted from a pre-hearing deposition or interview. *See Watts v. Office of Personnel Management,* 814 F.2d 1576, 1581 (Fed.Cir.1987) (rejecting a due process challenge to a limitation on discovery where employee "failed to assert what he might have learned from additional discovery").

The cases upon which Kropat relies, *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), and *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465 (D.C.Cir.1997), are also unavailing. For one thing, Kropat acknowledges that *Gilmer* and *Cole* both "dealt with the question of whether specific *statutory rights* could, by way of private agreements, be subjected to compulsory arbitration." Reply Brief for Petitioner at 18 (emphasis added). Thus, because this case involves very different issues, the principles articulated in *Gilmer* and *Cole* obviously are not directly relevant here. Moreover, those cases do not even hold that due process requires formal discovery prior to an arbitration hearing. Rather, each observed that because the procedures at issue did provide for *some* discovery, the agreements to arbitrate were more likely to be fair. *See Gilmer,* 500 U.S. at 31, 111 S.Ct. 1647; *Cole,* 105 F.3d at 1482. Such an observation, even if it were relevant in the present context, is a far cry from finding that the due process clause *requires* full, formal discovery in this case.

Not only is there no case law to support Kropat's claim that due process requires formal discovery, but the System in fact provides for a great deal of pre-hearing discovery. In Kropat's case, the parties exchanged documents and witness lists at least ten days prior to the hearing. Kropat was also furnished with the written statements of every witness who testified against him. Thus, he knew, prior to the hearing, essentially what each witness was going to say on the stand. Furthermore, in accordance with the System's requirements, Kropat's hearing was in front of a neutral arbitrator; and he had the right to be represented by counsel, the right of cross-examination, and the right to present evidence and witnesses on his own behalf. Kropat took full advantage of these rights. He makes no claim that the arbitrator was partial or otherwise unfair; to the contrary, the arbitrator went out of his way to ensure that the testimony against Kropat was relevant and not prejudicial. *See, e.g.,* J.A. A138. The arbitrator also gave Kropat substantial leeway in his lengthy cross-examinations, *see, e.g., id.* at A142–A170, and it is clear that the panel—which dismissed one of the charges—thoroughly considered the information elicited during these examinations, *see, e.g., id.* at A281, A293–A294.

Kropat responds that, although he was afforded these procedural protections, as a constitutional matter, he had the right to depose or interview the FAA's witnesses prior to the hearing. Again, however, there is simply no case law to support this claim. Moreover, in many cases, pre-hearing depositions would not even be desirable, because they are expensive, time-consuming, and do not necessarily contribute to the accuracy of the arbitrator's ultimate determination. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 34–35, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ("It is clear from experience that pretrial discovery by depositions and interrogatories

has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties.") (footnote omitted).

We have no doubt that Kropat received at least as much process as he was due. *Cf. Brock*, 481 U.S. at 266, 107 S.Ct. 1740 ("Providing the [petitioner] the relevant supporting evidence and a chance to meet informally with the investigator, to submit statements from witnesses and to argue its position orally, satisfies the constitutional requirement of due process for ... temporary deprivation" of a protected interest, even without the provision of a full evidentiary hearing.); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (holding that pretermination hearing, "though necessary, need not be elaborate"). Accordingly, we reject his due process challenge to the System.

### B. Equal Protection

■ Kropat, who is not covered by a collective bargaining agreement, also makes the novel, but meritless, claim that the equal protection component of the Fifth Amendment's due process clause entitles him to the same procedural protections enjoyed by FAA employees who are protected by collective bargaining agreements.

Kropat concedes that the appropriate standard of scrutiny is rational basis review. *See* Brief for Petitioner at 30–31; *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ("[A] classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). Thus, Kropat must establish that there is no rational basis for the FAA's policy of providing employees in bargaining units with the pro-

cedural protections guaranteed by their collective bargaining agreements, while not providing the same protections for employees who are not covered by collective bargaining agreements. *See Schweiker v. Wilson*, 450 U.S. 221, 235, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981) (classification withstands rational basis review if it "rationally advances a reasonable and identifiable governmental objective"). The eminently rational basis for this different treatment, however, is that employees who have not elected or are not afforded collective bargaining, and, thus, are not covered by collective bargaining agreements, obviously do not enjoy the benefits nor experience the burdens of such agreements.

Employees who are not in collective bargaining units are entitled to procedural protections sufficient to satisfy *Mathews* and its progeny. As discussed above, the procedural protections afforded Kropat in this case pass constitutional muster. Kropat wisely does not claim that he has a constitutional right to be included in a collective bargaining unit; thus, it follows that his employment benefits are not defined by reference to any collective bargaining agreement. The Constitution plainly does not require the FAA to afford employees like Kropat the same protections afforded employees who are covered by collective bargaining agreements. Therefore, Kropat's equal protection claim must fail.

### III. CONCLUSION

For the reasons stated above, we affirm the final order of the FAA.

*So ordered.*