Stephen T. CROCKETT, Plaintiff,

v.

DISTRICT OF COLUMBIA METRO-
POLITAN POLICE DEPART-
MENT, et al., Defendants,

No. CIV. 00–2260(RJL).

United States District Court,
District of Columbia.

Sept. 23, 2003.

Warren Leroy Copeland, Fort Washington, MD, for Stephen T. Crockett.

Robert Andrew DeBerardinis, Jr., Office of Corp. Counsel, D.C., Washington, DC, for District of Columbia Metro. Police Dept., Dist. of Columbia.

## MEMORANDUM OPINION & ORDER

LEON, District Judge.

Before the Court is a motion for summary judgment by Defendants, the District of Columbia Metropolitan Police Department ("MPD") and the District of Columbia ("D.C."). After due consideration of the parties' submissions and viewing the evidence in the light most

favorable to the plaintiff, the Court concludes that the plaintiff could not as a matter of law establish that MPD violated his due process rights. Accordingly, the Court grants the Defendants' motion for summary judgment.

## I. Background

Steven Crockett ("Crockett"), a former employee of MPD, brings an action under 42 U.S.C. § 1983 [1], claiming that the MPD violated his due process rights when he was terminated in September 1997. Pl.'s Compl. ¶¶ 1, 4. Crockett argues that MPD made false allegations to justify his termination.[2] Pl.'s Opp'n at 3. MPD, on the other hand, contends that Crockett was fired for forging and uttering false documents in connection with his attempt to obtain a federal bank loan. Def.'s Mot. for Summ. J. at 1.

Crockett was an officer in MPD assigned to the Second District from October of 1986 until his termination in September, 1997. Pl.'s Compl. ¶ 4. According to Crockett, he filled out a loan application on April 14, 1995, to obtain a loan from the Caroline Savings Bank in Fredericksburg, Virginia. Id. ¶ 7. After submitting an application that reflected his correct monthly payments to the Police Federal Credit Union ("Credit Union"), Crockett was told by Charlie Leonard [3] ("Leonard"), his loan officer, that Leonard would forward his loan application to the mortgage company if he could obtain a letter from the Credit Union that provided that Crockett paid to the Credit Union only half of what he actually paid them via a payroll deduction. Id. ¶¶ 8–10; Def.'s Mot. for Summ. J., Ex. 2 at 6. Although Crockett claims that Leonard told him the letter would not be used to obtain the loan, he faxed the loan officer statements that reflected that Crockett made monthly instead of biweekly payments. Pl.'s Compl. ¶¶ 13, 15.

On July 16, 1995, the Credit Union received a letter seeking verification of Crockett's reduced monthly payments to the Credit Union alleged in Crockett's letter. Def.'s Mot. for Summ. J., Ex. 5 at 3. The Credit Union denied either adjusting the account or arranging the letter. Id. At the request of the Credit Union, MPD investigated the matter, subpoenaing the mortgage company before a Grand Jury. Id. MPD examined a copy of the mortgage and Crockett's credit history, which had been subpoenaed from the credit bureau, and eventually discovered that the letter from the Credit Union was a forgery.

As part of the investigation, Crockett, on the record and in the presence of counsel, gave a statement admitting that he had forged the documents he forwarded to his loan officer. Def.'s Mot. for Summ. J., Ex. 5 at 7–11. MPD then placed him on administrative leave with pay. Pl.'s Compl. ¶¶ 16, 18. On June 24, 1997, Crockett pled guilty to various charges related to the incident at an internal hearing of MPD. Def.'s Mot. for Summ. J., Ex. 2 at 1–2. After considering the evidence and testimony in the hearing, the Panel concluded that Crockett's employment should be ter-

---

1. 42 U.S.C. § 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law …"

2. Mr. Crockett contends that the MPD terminated him because of his September, 1995, arrest of senior White House advisor George Stephanopoulos.

3. The whereabouts of Charlie Leonard is currently unknown. Plaintiff alleges that Leonard left town shortly after submitting Crockett's contract. Pl.'s Opp'n at 3.

minated. *Id.* at 8–10. Crockett was formally notified of his removal from the force in a letter from MPD on August 12, 1997. Def.'s Mot. for Summ. J., Ex. 4. Therein, MPD informed Crockett of his ability to appeal the decision. *Id.* After his appeal to Chief of Police Larry Soulsby, which was denied by letter on September 5, 1997, Crockett pursued no further administrative remedies. Def.'s Mot. for Summ. J. at 2.

Instead, on September 21, 2000, Crockett filed a complaint with this Court under 42 U.S.C. § 1983, alleging that MPD violated his due process rights in its termination of Crockett from the force. Pl.'s Compl. ¶ 1. After answering the complaint, MPD filed a 12(c) motion for judgment on the pleadings.[4] Def.'s Mot. for J. on the Pleadings at 2–5. Judge Sullivan denied this motion. *Crockett v. Dist. of Columbia Metro. Police Dep't,* No. 00–260 (D.D.C. Apr. 11, 2001) (order denying Defendants' Motion for Judgment on the Pleadings). MPD has now filed a motion for summary judgment, arguing that: (1) Crockett failed to exhaust his administrative remedies; and (2) that MPD violated neither his procedural, nor substantive, due process rights in its termination of him from the force.

## II. Discussion

■■■ Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judg-

ment, the Court must view the evidence in the light most favorable to the nonmoving party. *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the evidence that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Doe v. Gates,* 981 F.2d 1316 (D.C.Cir.1993). For the following reasons, the Court finds that the defendant's summary judgment motion should be granted, even though the plaintiff did exhaust his administrative remedies.

## A. Exhaustion of Administrative Remedies

■■■ MPD contends that it is entitled to summary judgment because Crockett failed to exhaust his administrative remedies through the OEA. The Court disagrees. Although typically an employee grievance must be filed through the OEA pursuant to the Comprehensive Merit Personnel Act ("CMPA"), here the administrative remedy would not have provided him the full relief he seeks in his claim under 42 U.S.C. § 1983.

The CMPA establishes a merit personnel system, through which adverse actions

---

**4.** The Defendants' motion was based solely on Crockett's failure to exhaust his administrative tive remedies.

against employees as well as employee grievances are handled. *See generally* D.C.Code § 1–615. This Circuit has stated that when an employee initiates a grievance proceeding against the employer, the matter will be resolved under either CMPA procedure or under a CMPA-sanctioned collective bargaining agreement. *District of Columbia v. Thompson,* 593 A.2d 621, 625, 635 (D.C.Cir.1991) (stating that the CMPA provided "employees with their exclusive remedies for claims arising out of employer conduct in handling personnel ratings, employee grievances, and adverse actions."). The D.C. Circuit, however, found an exception where the OEA proceeding, together with the availability of judicial review in the D.C. courts, did not present an adequate forum in which the plaintiff could fully and fairly pursue his federal claims. *Bridges v. Kelly,* 84 F.3d 470, 476–77 (D.C.Cir.1996).[5]

Here, Crockett did not appeal his termination by filing a claim through the OEA after his dismissal from the force. Although filing such a claim is usually necessary, Crockett was not required to because the D.C. system could not grant the full relief to him in connection with his federal claims. *See id.* Like the plaintiff in *Bridges,* Crockett has requested compensatory ($250,000) and punitive ($10,-000,000) damages that the OEA is not authorized to grant. Pl.'s Compl. at 7–8. Therefore, since the administrative forum provided by the OEA could not have provided a full and fair opportunity to litigate his federal claims, Crockett was not re-

quired to exhaust his administrative remedies before bringing this federal action. However, the plaintiff's claim of being deprived due process is another matter.

**B. Due Process**

 Crockett contends, in essence, that MPD violated his due process rights when it terminated his property interest in his continued employment. Pl.'s Opp'n at 6. The Due Process Clause of the Fourteenth Amendment prevents a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has held that public employees maintain a constitutionally protected property interest in their continued employment. *Bd. of Regents v. Roth,* 408 U.S. 564, 576–79, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, property interests are not created by the Constitution, but derived from independent sources, such as statutes, regulations, ordinances, or other existing rules or understandings. *Id.* at 577, 92 S.Ct. 2701. When governing law provides that a public employee may be discharged only for cause, the employee has a property interest in continued employment and cannot be terminated without due process. *Humberson v. U.S. Attorney's Office for the Dist. Of Columbia,* 236 F.Supp.2d 28, 30 (D.D.C.2003). MPD seemingly concedes that Crockett was entitled to due process before he was terminated because he was a public employee who was not employed at will.[6] Def.'s

---

5. There, the court found that the OEA was not authorized to grant punitive damages or compensatory damages in excess of back pay and benefits. *Id.* at 477. Moreover, the D.C. Superior Court and Court of Appeals could not entertain requests for relief that were not cognizable before the OEA. Although *Bridges* dealt primarily with the *Younger* doctrine, which restrains federal courts from interfering in ongoing state judicial proceedings, it is

nonetheless applicable because of its explicit commentary on the inability of the D.C. system to grant punitive damages and compensatory damages in excess of back pay and benefits. *Bridges,* 84 F.3d at 477.

6. It is unclear whether Crockett does, in fact, maintain a property interest in his continued employment because the "for cause" provi-

Mot. for Summ. J. at 4. In any event, it is ultimately unnecessary to decide whether Crockett maintained a constitutionally protected property interest in his continued employment because, even assuming he did, MPD afforded Crockett adequate due process of law both procedurally and substantively. Pl.'s Opp'n at 7.

### 1. Procedural Due Process

■ Crockett first argues that his termination from the force was a violation of procedural due process. MPD, however, did not violate procedural due process and even exceeded the minimal requirements for the removal of an employee.

The Supreme Court has held that a public employee has a right to procedural due process before he or she may be terminated. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In *Loudermill*, the Court highlighted the need for a pretermination hearing with some opportunity for the employee to present his side of the case.[7] *Id.* at 543, 105 S.Ct. 1487. Furthermore, the Court outlined the following minimal due process requirements for a tenured public employee: (1) oral or written notice of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity to present his side of the story. *Id.* at 546, 105 S.Ct. 1487. The D.C. Circuit has not required any additional due process requirements for the termination of its public employees, *see Kropat v. Fed. Aviation Admin.*, 162 F.3d 129, 132–34 (D.C.Cir.1998), and plaintiff was provided each in this case, and then some.

Here, MPD notified Crockett of the charges and proposed action against him

on November 15, 1996. Def.'s Mot. for Summ. J., Ex. 1. Then, on June 24, 1997, MPD held a hearing that included the presentation of evidence. *Id.*, Ex. 2. At the hearing, Crockett, in the presence of counsel, was given an opportunity to speak about the allegations, and presented three character witnesses on his behalf. *Id.* MPD fully explained the evidence and bases for their decision before deciding to terminate Crockett. *Id.* Thus, having exceeded the minimum requirements provided by the Supreme Court, MPD's termination of Crockett did not violate his procedural due process rights. Accordingly, even viewing the facts in a way most favorable to the plaintiff, he would be unable to demonstrate a violation of his procedural due process rights.

### 2. Substantive Due Process

■ Crockett also asserts that MPD denied him substantive due process when it terminated him from the force. Substantive due process "prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational [in that] it is not sufficiently keyed to any legitimate state interests." *Washington Teachers' Union v. Bd. Of Educ.*, 109 F.3d 774, 781 (D.C.Cir.1997) (quoting *Committee of United States Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 943–44 (D.C.Cir.1988)). The plaintiff has the burden of showing that there is no rational connection between the actions of the District and the interests that it asserts. *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979); *see also Yates v.*

---

sion of the CMPA has been repealed. *See* D.C.Code §§ 1–615 *et seq.*

**7.** The Court noted that, "the hearing, though necessary, need not be elaborate ... 'something less' than a full evidentiary hearing is

sufficient prior to adverse administrative action." *Loudermill*, 470 U.S. at 545, 105 S.Ct. 1487 (citing *Mathews v. Eldridge*, 424 U.S. 319, 343, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

*Dist. Of Columbia*, 324 F.3d 724, 725–26 (D.C.Cir.2003) (applying the same standard of substantive due process in an employment rights context). In this Circuit, a plaintiff must show "grave unfairness" by District officials in order to show a violation of substantive due process. *Tri County Industries, Inc. v. District of Columbia*, 104 F.3d 455, 459 (D.C.Cir.1997). There are two ways in which a plaintiff might meet the "grave unfairness" requirement: (1) a substantial infringement of the law prompted by personal or group animus, or (2) a deliberate flouting of the law that trammels significant personal or property rights. *Id.* (quoting *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C.Cir.1988)). The facts in this case, viewed in the light most favorable to the plaintiff, could not support a finding that the plaintiffs established a "grave unfairness" under either theory.

Crockett claims that MPD acted arbitrarily and capriciously in its justification of his termination. Pl.'s Opp'n at 3. The record suggests otherwise. In its report on Crockett's hearing, MPD repeatedly shows how Crockett's removal was in line with the goals of the police department. Def.'s Mot. for Summ. J., Ex. 2 at 9–10. Because he broke the law and negatively impacted the reputation of the force, MPD concluded that Crockett would be unable to adequately perform his duties as a police officer, because his ethics would be perpetually questioned, and because he lacked responsible judgment. *Id.* MPD's conclusion that his actions have threatened the integrity and reputation of the force were reasonable. Crockett's suggestion that his forgery of the Credit Union letter and altered pay stubs were not part of the loan applications, Pl.'s Opp'n at 4–6, has no merit, particularly in light of the fact that Crockett pled guilty to the charges at the hearing. Def.'s Mot. for Summ. J., Ex. 2 at 1–2. Even assuming the forgeries were not connected to the loan application, MPD would have had sufficient basis to terminate Crockett's employment for that fraudulent conduct alone. *See id.* at 8. There is nothing that suggests that the Panel unfairly examined the evidence or abused their discretion in any way. *Id.* at 9–10. MPD has clearly shown the rational connection between its actions and its interests in maintaining the reputation and quality of the police force.

Finally, Crockett has submitted no evidence that shows any "grave unfairness" in the actions of the department. Although Crockett virulently accuses MPD of false accusations and overstating facts, he submits no affidavits of evidence to support these charges. Pl.'s Opp'n at 2, 3, 7–8, 10. The only evidence that Crockett proffers is two newspaper articles describing his arrest of George Stephanopoulos. Pl.'s Compl., Ex. 1. These articles do not prove the plaintiff's theory that the arrest of Stephanopoulos was the true justification of Crockett's termination. In essence, Crockett is merely doing what Rule 56(e) expressly forbids: propounding mere allegations absent specific facts, by affidavits or otherwise, that show there is a genuine issue of fact for trial. Because MPD has shown a rational connection between its actions and its legitimate interests and because there is no evidence of any "grave unfairness" on its part, it did not violate the plaintiff's substantive due process rights when it terminated him. Accordingly, the defendant is entitled to summary judgment.

### III. Order

For the reasons stated above, it is on this 23rd day of September 2003, hereby

ORDERED that Defendants' motion for summary judgment is GRANTED;

SO ORDERED.