**BEVERLY ENTERPRISES, INC., Plaintiff,**

v.

**Alexis M. HERMAN, Secretary, United States Department of Labor et al., Defendants.**

No. 99–2408 RMU.

United States District Court, District of Columbia.

Aug. 24, 2000.

**4**

Phyllis E. Andes, Fenwick & West, L.L.P., Washington, DC, John Charles Fox, Fenwick & West LLP, Palo Alto, California, for plaintiff.

Stephen J. Curran, U.S. Department of Justice, Civil Division, Washington, DC, Richard S. Ugelow, U.S. Department of Justice, Employment Litigation/Civil Rights Division, Washington, DC, for defendants.

## MEMORANDUM OPINION

GRANTING THE DEFENDANTS' MOTION TO STRIKE EVIDENCE; GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' SUMMARY JUDGMENT MOTION; DENYING THE PLAINTIFF'S SUMMARY JUDGMENT MOTION; REMANDING TO THE AGENCY TO DETERMINE WHETHER SUBSIDIARIES MAY BE SANCTIONED

URBINA, District Judge.

## I. INTRODUCTION

Beverly Enterprises, Inc. ("the plaintiff") brings this action to set aside a final decision and order ("order") by the Department of Labor's Administrative Review Board ("the Board"). The plaintiff operates nursing homes that provide care for veterans. The defen-dants are the Department of Labor, the Office of Federal Contract Compliance Programs ("OFCCP") and the heads of both agencies. The order would cancel the plaintiff's current contracts with the government and bar the plaintiff and its subsidiaries from future government contracts unless the plaintiff allows the OFCCP to conduct a Corporate Man-agement Review ("CMR") within thirty days of the order's issuance. Under the CMR, the OFCCP would inspect the plaintiff's files and headquarters to determine whether the plaintiff is com-plying with affirmative-action standards required for federal contractors.

The plaintiff contends the order violates its Fourth Amendment, Fifth Amendment and procedural rights. The defendants maintain that both the proposed search and the administrative proceedings that affirmed the search fully comported with the plaintiff's constitutional rights.

The defendants move to strike certain evidence that the plaintiff presents that is not contained in the administrative record compiled during the agency hearings. The defendants ask that the court base its deci-sion solely on the administrative record. The contested evidence consists of affida-vits and exhibits regarding the process by which defendant OFCCP selected the plaintiff for a CMR. The plaintiff argues this evidence is necessary to show that defendant OFCCP acted in bad faith dur-ing the agency proceedings and that the administrative record is too bare for re-view by this court.

Both sides have moved for summary judgment on the plaintiff's Fourth Amend-ment, Fifth Amendment and procedural claims. The plaintiff and the defendants contend that this court should determine, as a matter of law, whether: (1) the selec-tion of the plaintiff for an administrative search comports with the Fourth Amend-ment, (2) the expedited hearing procedures used in the administrative proceedings met the Fifth Amendment's minimum Due Pro-cess requirements and (3) the A.L.J. and

the Board followed agency guidelines during the administrative proceedings. The plaintiff further claims that the Board lacked the power to punish its subsidiaries for any of its violations because the subsidiaries did not have the opportunity to be heard.

The court concludes that: (1) the plaintiff may not supplement the administrative record with affidavits, (2) the selection of the plaintiff for the administrative search was valid under the Fourth Amendment, (3) the agency's expedited hearing procedures in this case met the Fifth Amendment's minimum Due Process requirements, (4) the agency's procedures did not violate the agency's guidelines, (5) the court lacks the information to determine whether the plaintiff's subsidiaries may be sanctioned for the actions of their parent company and (6) the defendants must give the plaintiff 30 days after the Board's final ruling to comply with its affirmative-action responsibilities before it can enforce the sanctions. The case is therefore remanded to the Administrative Review Board of the Department of Labor for proceedings consistent with this opinion.

## II. BACKGROUND

The plaintiff is an Arkansas corporation that operates nursing homes that provide skilled nursing care for veterans. *See* Administrative Record (hereinafter "R.") at 1567. In various contracts with the Veterans Administration, the plaintiff has agreed to be bound by the affirmative-action provisions contained in Executive Order 11,246. *See* R. at 1567. Executive Order 11,246 requires that whenever the federal government purchases goods or services the government must insert a provision into the contract that prohibits the contractor from discriminating on the basis of race, sex, color, religion or national origin. *See* Exec. Order No. 11,246, § 202(1), 30 Fed.Reg. 12319 (1965). The executive order also requires that contractors establish and update a written affirmative action program and allows the Secretary of La-

bor to set guidelines for verifying compliance. *See id.* at § 202(5), § 205. If a contractor fails to comply with these guidelines, the Secretary of Labor is empowered to terminate all contracts with that contractor and order that the government not deal with that contractor until it complies with the executive order. *See id.* at § 209(5), § 209(6).

One method by which the Department of Labor secures compliance with affirmative action programs is through a corporate management review ("CMR"), an administrative search that normally includes a review of the company's affirmative action files, an on-site review of the company's headquarters and an off-site analysis. *See* R. at 1567. The process for selecting companies for review begins when federal contractors, such as the plaintiff, file an Equal Employment Opportunity Employer Information Report with the Equal Employment Opportunity Commission. *See* R. at 1568. The plaintiff's report lists the location of the plaintiff's headquarters, the number of employees, the number of facilities and the plaintiff's industry. *See* R. at 711–12 (sample form). This information is entered into a computer and given to the Office of Federal Contract Compliance Programs in the Department of Labor ("OFCCP"). *See* R. at 1568.

The OFCCP organizes the list of company headquarters into separate geographical lists corresponding to the jurisdictional territory of each OFCCP local office. *See* R. at 1568. The national office then sends each local office a list of the companies, placed in random order, which have headquarters in its jurisdiction ("CMR candidate list"). *See* R. at 1568. Defendant OFCCP claims the only criteria that affect the order and composition of the CMR candidate list are: (1) the geographical location of the company's headquarters, (2) the number of facilities the company owns, (3) the status of the company as a federal contractor and (4) the number of people the company employs. *See* Defs.' Mot. for Sum.J. at 9. The plaintiff, however, argues

that the computer program that generates the CMR candidate list considers other factors, including the company's industry. *See* Pl.'s Mot. for Summ.J. at 2–3.

The OFCCP local offices then are assigned to conduct a certain number of CMRs each year by their regional office. *See* R. at 707. The area director for each local office starts at the top of the CMR candidate list and decides whether the office can review the candidate. *See* R. at 1568. A company may be rejected for review if it is out of business, its contract is completed, its contract is worth less than $50,000, it has fewer than 50 employees, there is no evidence of its contract with the government, it was reviewed within the past two years, it was reporting to the OFCCP under a Conciliation Agreement or it is a signatory to a consent decree. *See* R. at 709. The director continues down the list until he or she has selected enough companies for review to fill the quota for that office. *See* R. at 707–709. The national office director then confirms the accuracy of the area director's decisions. *See* R. at 1568. After this process is complete, the agency notifies the chosen companies of their selection and offers them an opportunity to request an explanation for their selection. *See* R. at 1569.

In 1998, the Little Rock, Arkansas office of the OFCCP was assigned to choose one company in its jurisdiction for a CMR. *See* R. at 1569. According to the defendants, the plaintiff's name was placed third on a list of three candidates that was given to area director Joel Maltbia by the national office. *See* R. at 1568–69. Mr. Maltbia claimed he rejected the first name on the list because the Federal Procurement Data System, the OFCCP's computer listing of federal contractors, did not list the company as having a current contract with the federal government. *See* R. at 827. Mr. Maltbia eliminated the second name from the list because he believed that the company was already reporting to the OFCCP under a consent decree. *See* R. at 827.

By contrast, Mr. Maltbia found that the plaintiff did not meet any of the criteria for being rejected for review. *See* R. at 1569. Accordingly, Mr. Maltbia filled out rejection forms for the first two candidates on the list and recommended that the plaintiff be selected for review. *See* R. at 827–28. Mr. Busch, the national office director, approved Mr. Maltbia's choice of the plaintiff for a CMR. *See* R. at 1569.

The plaintiff was informed of its selection in October 1998. *See* R. at 1569. Mr. Reilly, the plaintiff's deputy general counsel and vice-president, met with OFCCP officials later that month to discuss the criteria by which the plaintiff was selected for a CMR review. *See* R. at 1569. Mr. Reilly expressed concerns that the plaintiff was being targeted for review because its other 699 facilities had been selected for other types of review on many occasions in the past few years. *See* R. at 1570. During this time, the plaintiff's companies were found to be compliant 100% of the time. *See* R. at 1570. Mr. Reilly believed the meetings with OFCCP officials failed to address his concerns and he refused to let the defendant OFCCP conduct its review. *See* R. at 1723.

On May 17, 1999, defendant OFCCP filed an Administrative Complaint with the Department of Labor's Office of Administrative Law alleging that the plaintiff's refusal to submit to a CMR violated its obligations under Executive Order 11,246. *See* R. at 1723. The defendants asked that the plaintiff be enjoined from refusing to comply with its affirmative action obligations. *See* R. at 1723. The plaintiff claimed it was not selected according to a neutral administrative plan, as required by the Fourth Amendment. Pursuant to its guidelines, defendant OFCCP used its discretion to initiate an "expedited hearing." *See* R. at 1566. Under an expedited hearing, discovery is limited to admissions, an exchange of witness lists, and oral depositions allowed by the Administrative Law Judge ("A.L.J."). *See* 41 C.F.R. § 60–30.33. The A.L.J. denied some of the plain-

tiff's discovery requests because such requests are not allowed in an expedited hearing. *See* R. at 816. The plaintiff, however, was allowed to employ counsel, take depositions from and cross-examine OFCCP officials involved in the plaintiff's selection for a CMR, review all documents considered by the agency in its decision and present its own exhibits and witnesses to prove its case. *See* R. at 807–1100.

On July 22, 1999, the A.L.J. issued a recommended decision and order ("decision") to the Board finding that the plaintiff's selection for a Corporate Management Review was valid. *See* R. at 1571. Based on this finding, the A.L.J. recommended that the Administrative Law Board cancel the plaintiff's contracts with the government and bar the plaintiff and its subsidiaries from future government contracts until it complied with the requirements of Executive Order 11,246. *See* R. at 1573. On September 1, 1999, the Board issued an order in which it accepted the factual findings and recommendations of the A.L.J. with the exception of the A.L.J.'s recommendation to immediately cancel the government's contracts with the plaintiff and its subsidiaries. *See* R. at 1726. Instead, the Board gave the plaintiff 30 days to comply with Executive Order 11,246 before any sanction would be imposed. *See* R. at 1734.

The plaintiff appealed the Board's decision to this court as contrary to the plaintiff's constitutional and procedural rights and also sought to limit the scope of the remedy. The defendants filed a motion to strike the affidavits submitted by the plaintiff and both sides have moved for summary judgment. This court has jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.

## ANALYSIS

### A. MOTION TO STRIKE

This motion concerns three affidavits offered by the plaintiff that were not put before the Department of Labor's Administrative Review Board when it made its decision. The defendants move to strike these documents as improperly supplementing the administrative record. *See* Defs.' Mot. to Strike at 2. When reviewing a decision under the Administrative Procedure Act ("APA"), district courts generally are restricted to the record that was before the agency.[1] *See Commercial Drapery Contractors v. United States*, 133 F.3d 1, 7 (D.C.Cir.1998). The plaintiff, however, argues that an exception to the general rule should apply here because defendant OFCCP purposely limited the plaintiff's discovery to prevent it from presenting its case and because the new evidence would show that the agency decision was wrong. *See* Pl.'s Opp'n to Defs.' Mot. to Strike ("Pl.'s Opp'n") at 1. For the following reasons, the court finds no basis for departing from the general rule of agency review under the APA and will grant the defendants' motion to strike.

### 1. Admitting Evidence Submitted After the Administrative Procedure

■ When a court reviews an administrative agency's decision under the APA, the court must limit its review to the administrative record. *See Commercial Drapery*, 133 F.3d at 7 (citing *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C.Cir.1981)); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C.Cir.1997). Without a stipulation, a court may depart from this rule only upon a "strong showing of bad faith or improper behavior" or "when the record is so bare that it prevents effective judicial review." *See Commercial Drapery*, 133 F.3d at 7 (quoting *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)); *IMS*, 129 F.3d at 624 (stating parties may stipulate to admission

---

1. The defendants also argue that the evidence should be excluded because it fails to comply with the Federal Rules of Evidence. It is unnecessary to address these arguments because the court will exclude the affidavits on other grounds.

of later-submitted evidence).[2] As discussed below, the court concludes that these exceptions do not apply. Accordingly, the scope of review will be limited to the record that was before the administrative agency.

### a. Bad-faith exception

The plaintiff claims that the affidavits it presented to the court should be admitted because they contain information that the defendant OFCCP deliberately withheld. *See* Pl.'s Opp'n at 1. In essence, the plaintiff believes that the OFCCP acted in bad faith by using an expedited hearing to "deliberately . . . [exclude] documents that may have been adverse to its decision." *Id.* When a party accuses an agency of bad faith, the agency is entitled to a presumption of administrative regularity and good faith that must be overcome with evidence. *See FTC v. Owens–Corning Fiberglas Corp.,* 626 F.2d 966, 975 (D.C.Cir.1980). Thus, to expand discovery because an agency withheld evidence, there must be a "strong showing of bad faith or improper behavior." *See Community for Creative Non–Violence v. Lujan,* 908 F.2d 992, 997 (D.C.Cir.1990) (citing *Citizens to Preserve Overton Park,* 401 U.S. at 420, 91 S.Ct. 814). This requires a "prima facie showing" that the agency either purposefully or negligently excluded record evidence adverse to its position. *See Kent County v. U.S. EPA,* 963 F.2d 391, 396 (D.C.Cir.1992). For the reasons discussed below, the court holds that the plaintiff has failed to make a sufficient showing of bad faith on the part of defendant OFCCP.

#### (i) *Expedited-hearing guidelines*

According to OFCCP guidelines, an expedited hearing "may be used . . . when a contractor . . . has refused to give access to or to supply records or other information as required by the equal opportunity clause." 41 C.F.R. § 60–30.31. Once the OFCCP has implemented an expedited hearing, the parties may use only requests for admissions, a request for the opposing side's witness list and, upon a showing of good faith, depositions. *See* 41 C.F.R. § 60–30.33(c). No other forms of discovery are permitted in such proceedings. *See id.*

#### (ii) *Alleged bad-faith violation of normal agency procedure*

The plaintiff does not dispute that defendant OFCCP initiated the administrative proceeding because the plaintiff refused to supply records, a refusal that allows the OFCCP to institute an expedited hearing under its regulations. It is also undisputed that the depositions and documents the plaintiff sought were not allowed to be discovered in an expedited hearing. The plaintiff instead argues that the OFCCP persuaded the Administrative Law Judge ("A.L.J.") to apply the OFCCP expedited hearing regulations in this case more strictly than in other cases. *See* Pl.'s Opp'n at 2. However, the plaintiff cites only one instance where an A.L.J. found that the discovery process in an expedited hearing was not consistent with "the demands of due process." *See Boeing Co.,* 99 OFC 14 (1999), R. at 1705. The plaintiff argues that the A.L.J.'s decision in *Boeing* shows that the OFCCP and the A.L.J. acted inappropriately in this case. The court finds this argument unconvincing for two reasons. First, the A.L.J. in *Boeing* approvingly cited the A.L.J.'s July 22 decision in this case as an example of modifying the rules *in the plaintiff's favor* to "foster the ends of justice." *Id.,* R. at

---

**2.** This circuit has acknowledged eight exceptions to the general rule of limiting review to the agency record in *informal* agency proceedings, and has limited their use even in that context. *Compare Esch v. Yeutter,* 876 F.2d 976, 991 (D.C.Cir.1989) (stating eight exceptions) *with Peterson Farms I v. Espy,* 1994 WL 26331, 15 F.3d 1160 (D.C.Cir.1994) (holding that applying the eight exceptions generally was "dicta"). Since the agency proceeding at issue is a *formal* hearing with a record, the court will consider only the two exceptions from *Overton Park.*

1706. Thus, the only possible irregularity in this case was that the plaintiff might have been allowed *more* discovery than the guidelines provide. Secondly, in *Boeing*, the OFCCP relied solely on "community concerns" about the company's affirmative action program in selecting Boeing for a CMR. The OFCCP, however, could not legitimately explain how it determined that there were "community concerns" about Boeing's affirmative action program.[3] *Id.,* R. at 1710. In this case, the plaintiff was not targeted for investigation based on unidentified evidence of discrimination. Rather, the defendant OFCCP chose the plaintiff using a random selection process. This type of process does not raise the same concerns that the defendant OFCCP withheld factual information needed by the A.L.J. to make a proper decision. Thus, the court finds that the use of expedited hearing procedures in this situation was not for the purpose of excluding the plaintiff's evidence in the hearing.

(iii) *Conclusion*

■ For the reasons discussed above, the court holds that the plaintiff has failed to make the required showing that the OFCCP's use of an expedited hearing was in bad faith. Specifically, the court finds that the defendant OFCCP invoked a standard procedure that allows the agency to effectively enforce compliance with affirmative-action programs under Executive Order 11,246.[4] Furthermore, "the conduct and extent of discovery in agency proceedings is a matter ordinarily entrusted to the expert agency." *See Trailways Lines, Inc. v. ICC,* 766 F.2d 1537, 1546 (D.C.Cir. 1985). Thus, an agency decision will not be overturned because a company was justifiably denied a discovery request that "wandered intrusively" into the agency's

operations. *Id.* For these reasons, the court holds that the OFCCP's decision to use an expedited hearing was not in bad faith.

**b. Preventing judicial review**

A court also may consider material outside of the administrative record if an agency fails "to explain administrative action [so] as to frustrate effective judicial review." *See IMS,* 129 F.3d at 624 (quoting *Camp v. Pitts,* 411 U.S. 138, 142–43, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). However, the plaintiff must demonstrate that the agency "failed to examine all relevant factors or to adequately explain its grounds for decision." *Id.* In this case, the court concludes that the record amply supports the agency's decisions and the record requires no additional information.

The plaintiff presents three sets of exhibits to show that the agency failed to review all relevant factors. These exhibits focus on the OFCCP's application, rather than the substance, of its procedures. *See* Pl.'s Opp'n at 3. Specifically, the plaintiff challenges the designation of only three companies on the CMR candidate list and Mr. Maltbia's decision to select the third company on the list. The court will address each contention in turn.

(i) *Creation of the CMR candidate list*

To support its claim that the CMR candidate list given to the Little Rock office should have contained more than three names, the plaintiff presented: (1) an OFCCP manual describing how the computer selection system works, (2) a list of Arkansas companies that the plaintiff asserts were qualified to be on the list, (3) a deposition from a statistician stating which Arkansas companies should have been on

---

3. Specifically, the OFCCP admitted it relied solely on four news reports and information obtained from people who had heard others complain about Boeing.

4. Regulations that are promulgated pursuant to an Executive Order have the force and effect of law and, therefore, are entitled to

deference from this court. *See Investment Co. Inst. v. FDIC,* 815 F.2d 1540, 1546 (D.C.Cir. 1987); *Uniroyal, Inc. v. Marshall,* 482 F.Supp. 364, 368 (D.D.C.1979) (citing *Maryland Cas. Co. v. United States,* 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920)).

the list, (4) an affidavit from Mr. Biermann, a former high-level OFCCP employee, who said that more names belonged on the list and (5) a memorandum stating the OFCCP was using the Equal Employment Data System ("EEDS") computer selection system.

The first piece of evidence, the manual, while not presented at the hearing, serves only to outline the procedures that OFCCP uses to select companies. The A.L.J. found that these procedures were adequately summarized in the administrative hearing by a written memorandum admitted into evidence and by the testimony of Mr. John Lawrence, OFCCP national office program management and information development branch chief, and Mr. Harold Busch, OFCCP national office director of program management. *See* R. at 1571. A comparison of the evidence that the A.L.J. considered and the manual the plaintiff presented shows that the A.L.J. was correct in his assessment. *Cf.* Memorandum from Wilcher to Regional Directors, R. at 707 *with* Decl. of Timothy O'Rourke, Ex. B.

■ The list of companies that the plaintiff maintains were qualified to be on the list, the deposition from the statistician and Mr. Biermann's affidavit also fail to show that the A.L.J. overlooked any relevant information for two reasons. First, the plaintiff could have presented all of this information to the agency even under expedited hearing procedures, but chose not to do so.[5] In a meeting in Dallas in October 1998, the OFCCP provided the plaintiff with the basic selection criteria the OFCCP used to generate the CMR candidate list. R. at 1571. The plaintiff also learned that the CMR candidate list contained only three names far enough in

advance of the hearings to present this fact as evidence before the A.L.J.[6] Permitting a district court to consider information that should have been submitted to the agency before the dispute reached the courts is inconsistent with "the prevailing standards of agency review" because doing so would deprive the agency of an opportunity to consider the evidence, make its ruling and state the reasons for the ruling. *See Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946); *IMS*, 129 F.3d at 624 (citing *AT & T Info. Sys. v. GSA*, 810 F.2d 1233, 1236 (D.C.Cir.1987)). The list of companies, the statistician's deposition and Mr. Biermann's affidavit also incorrectly assume that the local OFCCP office had jurisdiction over all of Arkansas. However, three counties were outside of the office's jurisdiction in 1998. *See* R. at 903–04. It is far from clear whether the companies that the plaintiff asserts should have been on the Little Rock office's CMR candidate list, in fact should have been on that list. Such inconclusive evidence is insufficient to expand the record because it fails to prove the A.L.J. made a mistake given the information available to him at the time of the decision. *See Walter O. Boswell Mem. Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir.1984) (holding that a court should evaluate an agency's decision based on the information that was before the agency). Thus, the court finds that there was ample information in the record to support the agency's finding that the list of companies was properly generated.

(ii) *The plaintiff's selection from the CMR candidate list*

The plaintiff also offers Mr. Biermann's affidavit to show that Mr. Maltbia's selection of the third company from the list was

---

5. Moreover, the court notes that the plaintiff did not initiate its FOIA requests until after the A.L.J. issued his decision, suggesting that had the plaintiff really needed the information, it would have acted earlier. *See, e.g.,* Letter from Hixson to Wilcher, O'Rourke Dep., Ex. D at 1 (dated August 20, 1999).

6. Plaintiff claims that it found out about the three-company list "on the eve of" the hearing. *See* Pl.'s Opp. at 3. However, Mr. Maltbia's deposition, taken two weeks before the hearing, provided this information. *See* R. at 164 (Dep. of Joel Maltbia).

improper. As with the evidence discussed above, the plaintiff possessed the information necessary to make this assertion before the hearing and, if the plaintiff wanted the A.L.J. to consider that evidence, it should have presented it at the hearing. Furthermore, the A.L.J. had sufficient evidence to decide the issues raised by Mr. Biermann's affidavit. Mr. Biermann states that Mr. Maltbia did not follow proper procedures in determining whether the first company on the list was a contractor and incorrectly assessed whether the second company on the list was subject to a consent decree. *See* Decl. of Leonard J. Biermann ¶¶ 5–6. According to Mr. Biermann, Mr. Maltbia failed to follow proper procedure when he relied exclusively on the Federal Procurement Data System ("FPDS") to find out whether the first company on the CMR candidate list had a federal contract. Mr. Biermann's assessment, however, is disputed by the testimony in the administrative hearing from two current OFCCP officials who stated that Mr. Maltbia's actions were in compliance with standard procedures. *See* R. at 930–31 (Joyce's testimony); R. at 1043–44 (Busch's testimony). The A.L.J. found these witnesses to be competent and their testimony to be credible. *See* R. at 1571. Furthermore, the guidelines submitted by the plaintiff state that the official "can" either: use the FPDS, get information from other agencies, look up the company in a directory of companies with contracts or, as a last resort, call the company. *See* Biermann Decl., Ex. B at 4. The guidelines do not require the official to call the company, as the plaintiff claims. Accordingly, the court holds that there was a rational basis for the A.L.J. and the Board to conclude that Mr. Maltbia acted properly in bypassing the first name on the list.

Mr. Biermann's second contention, that Mr. Maltbia incorrectly excluded the second company on the list because the consent agreement was with a subsidiary and not the headquarters, directly conflicts with the record. Mr. Maltbia testified, to the best of his memory, that his research showed the consent decree applied to the headquarters as well as to the subsidiaries. *See* R. at 852. It is the A.L.J.'s responsibility to determine the credibility of testimony in the hearing. *See Southwest Merchandising Corp. v. NLRB*, 53 F.3d 1334, 1341 (D.C.Cir.1995). In this case, the A.L.J. found this testimony to be credible. *See* R. at 1571. Therefore, the A.L.J. had enough evidence to support his conclusion that Mr. Maltbia's decision to skip the second company on the list was appropriate.

### (iii) *Conclusion*

The evidence that the plaintiff now seeks to have the court consider was both untimely and fails to show that the A.L.J. and the Board failed to consider all of the relevant factors in deciding the case. Accordingly, the court finds that the record is not so bare as to prevent judicial review.

### c. Conclusion

In APA cases, the district court generally may not add evidence to the administrative record. *See Commercial Drapery*, 133 F.3d at 7. The only two exceptions are when the agency acted in bad faith or the record was so bare that it prevented judicial review. *See id.* The court holds that the OFCCP did not act in bad faith and that the agency's decision is rationally based on the evidence that was before it. Thus, the court grants the defendants' motion to strike.

### B. CROSS–MOTIONS FOR SUMMARY JUDGMENT

#### 1. Legal Standard

Each side has filed a motion for summary judgment. Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The substantive law upon which a claim rests determines which facts are material. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of a legal claim or defense, then it is material; otherwise, it is not. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Farmland Inds. v. Grain Bd. of Iraq,* 904 F.2d 732, 736 (D.C.Cir.1990) (internal citations omitted). Only disputes over facts that can establish an element of the claim, and thus might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Farmland Inds.,* 904 F.2d at 735–36.

When faced with cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining in each case whether a judgment may be entered for the moving party. *See Held v. American Airlines, Inc.,* 13 F.Supp.2d 20, 23 (D.D.C. 1998). To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *District Intown Properties Ltd. Partnership v. D.C.,* 198 F.3d 874, 878 (D.C.Cir.1999). In ruling on the motion, the court must accept the evidence of the nonmoving party as true and draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *District Intown Properties,* 198 F.3d at 878. It is not sufficient, however, for the nonmoving party to establish "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position ... there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Farmland Inds.,* 904 F.2d at 735–36. Accordingly, when a court reviews an agency decision under the APA, summary judgment may be granted only if the record precludes all genuine issues of material fact. *See Sher-*

*wood v. Washington Post,* 871 F.2d 1144, 1148 n. 4 (D.C.Cir.1989) (internal citations omitted).

In this case, the court concludes that the defendants have met their burden of proving that there is no genuine issue of material fact regarding the plaintiff's Fourth Amendment, Fifth Amendment and procedural claims. Accordingly, the defendants' motion for summary judgment will be granted as to those claims. However, based on the facts in evidence, the court cannot determine whether the Board may properly sanction the plaintiff's subsidiaries. Therefore, the court denies both parties' summary judgment motions as to this matter and remands this question to the agency for further development.

### 2. APA Standard of Review

Under the APA, the court must hold unlawful any agency action, findings and conclusions that it finds to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." *See* 5 U.S.C. § 706(2)(A). It is well established, however, that this standard of review is highly deferential, because the reviewing court may presume the agency action to be valid. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). The court is prohibited from substituting its own judgment for that of the agency. *See id.* at 416, 91 S.Ct. 814.

The level of deference, however, depends on whether the agency's conclusion is based on factual interpretation or is purely a question of law. This distinction between factual and legal questions is consistent with the district court's role as providing appellate review of certain agency actions. *See James Madison, Ltd. v. Ludwig,* 82 F.3d 1085, 1096 (D.C.Cir.1996). If the agency's holding is based on factual analysis, the court will set it aside only if the holding is unsupported by "substantial evidence." *See Robinson v. NTSB,* 28 F.3d 210, 215 (D.C.Cir.1994). The sub-

stantial-evidence test requires enough evidence that a reasonable mind might accept as adequate to support the conclusion of the agency. *See id.* The court must accept decisions based on substantial evidence even if a plausible alternative interpretation of the evidence would support another view. *See id.* If the agency's finding concerns a purely legal question, however, the court reviews the finding *de novo* to ensure the agency does not exceed its authority. *See* 5 U.S.C. § 706(1); *Office of Communication of the United Church of Christ v. FCC*, 707 F.2d 1413, 1422–23 (D.C.Cir.1983); *accord Coca Cola Co. v. Atchison, Topeka, and Santa Fe Ry. Co.*, 608 F.2d 213, 218 (5th Cir.1979). Based on these standards, the court will: (1) review *de novo* the legal standard used by the agency in deciding the Fourth Amendment claim; (2) review under the substantial evidence standard the factual findings that supported the Board's conclusion that the search does not violate the Fourth Amendment and (3) review *de novo* the plaintiff's legal arguments under the Fifth Amendment that the Board did not address.[7]

### 3. Fourth Amendment Claim

The plaintiff contends that the administrative decision should be set aside because the compliance review that the OFCCP seeks to conduct is "contrary to [the plaintiff's] Fourth Amendment rights protecting against an unreasonable administrative search." *See* Pl.'s Mot. for Summ.J. at 1. The defendants contend that the plaintiff has failed to present any evidence showing that its selection for a compliance review violated the plaintiff's

Fourth Amendment rights. For the reasons discussed below, the court holds that the search did not violate the plaintiff's Fourth Amendment rights. Therefore, the court grants the defendants' motion for summary judgment and denies the plaintiff's motion for summary judgment on this claim.

#### a. Legal standard for Fourth Amendment claims

For an administrative search to be valid under the Fourth Amendment, an agency must first show probable cause.[8] *See Marshall v. Barlow's*, 436 U.S. 307, 320, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). The Supreme Court has held that probable cause is established when there is either "specific evidence of an existing violation" or the particular company was chosen according to "reasonable legislative or administrative standards." *Id.* The Fifth Circuit has interpreted *Marshall* to require that the proposed search be: (1) authorized by statute; (2) properly limited in scope and (3) initiated in a proper manner. *See United States v. Mississippi Power & Light Co.*, 638 F.2d 899, 907 (5th Cir.1981). The defendants argue that the proper factors for the court to consider are: (1) whether the party challenging the search had a legitimate expectation of privacy in the place searched or thing seized and (2) whether the search was reasonable. *See* Defs.' Mot. for Summ.J. at 22–23. The cases the defendants cite for this standard, however, involve police searches based on the suspicion that a crime was being committed. *See, e.g., Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (searching an apartment for co-

---

7. The plaintiff claims that the court may not affirm the agency's Due Process decision because the Board's opinion did not discuss it. *See* Pl.'s Reply in Supp. of Mot. for Summ.J. ("Pl.'s Reply") at 18. However, the cases that the plaintiff cites for this proposition hold only that the court must determine whether the substantive decision was based on the policies and precedents that the agency relied on at the time of its decision. *See, e.g., Reservation Telephone Cooperative v. FCC*, 826 F.2d

1129, 1134 (D.C.Cir.1987); *see also Railway Labor Executives' Ass'n v. ICC*, 914 F.2d 276, 283 (D.C.Cir.1990) (explaining holding in *Reservation Telephone* ).

8. The agency is not required to obtain a search warrant. *See Marshall*, 436 U.S. at 325, 98 S.Ct. 1816; *United States v. Mississippi Power & Light Co.*, 638 F.2d 899, 907 (5th Cir.1981).

caine); *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (searching a car for a gun); *Rogala v. D.C.,* 161 F.3d 44 (D.C.Cir.1998) (stopping a driver and conducting a sobriety test). The standard for probable cause, however, differs between administrative searches and police searches. *See Marshall,* 436 U.S. at 320, 98 S.Ct. 1816. Thus, as discussed below, the court holds that the agency applied the correct standard in evaluating the plaintiff's Fourth Amendment claim.

### b. Application of Fourth Amendment Standard

#### (i) *Authorized by statute*

■ Here, the administrative search to enforce compliance with affirmative action programs was authorized pursuant to an executive order which has the force of law. *See Uniroyal, Inc. v. Marshall,* 482 F.Supp. 364, 368 (D.D.C.1979) (executive orders have the force of law). The plaintiff does not dispute that the administrative search in this case is "authorized by statute" for the purposes of this test. *See, e.g.,* Pl.'s Mot. for Summ.J. at 11–29 (declining to challenge whether the administrative search is authorized by statute). Executive Order 11,246, which requires companies that contract with the federal government to maintain an affirmative action program, has been widely held to authorize administrative searches to confirm compliance with its mandates. *See, e.g., United States v. New Orleans Public Serv., Inc.* (NOPSI), 723 F.2d 422, 425 (5th Cir.1984); *First Alabama Bank of Montgomery v. Donovan,* 692 F.2d 714, 721 (11th Cir.1982); *Uniroyal,* 482 F.Supp. at 371. The court sees no reason to depart from the holdings in these cases.

#### (ii) *Properly limited in scope*

Similarly, the plaintiff does not contest the defendants' assertion that administrative searches to confirm compliance with affirmative action programs are properly limited in scope. *See, e.g.,* Pl's Mot. for Summ.J. at 11–29 (declining to discuss whether the search is properly limited in scope). Courts that have adopted the Fifth Circuit test for administrative searches have generally held that an administrative search of a company's affirmative action files is properly limited in scope. *See, e.g., Mississippi Power,* 638 F.2d at 908; *First Alabama,* 692 F.2d at 721. A limited on-site inspection is also allowed if it meets the same requirements. *See Marshall,* 436 U.S. at 307, 98 S.Ct. 1816 (on-site inspection of a work area is legal if it is authorized by statute, properly limited in scope and initiated in a proper manner). Thus, the court holds that the proposed search is properly limited in scope.

#### (iii) *Initiated in a proper manner*

■ An administrative search violates the Fourth Amendment unless the agency shows the company's selection for the search is based on: (1) specific evidence of an existing violation, (2) reasonable legislative or administrative standards that have been met with respect to that particular contractor or (3) an administrative plan containing specific neutral criteria. *See Mississippi Power,* 638 F.2d at 907 (citing *Marshall,* 436 U.S. at 320–23, 98 S.Ct. 1816). In this case, the defendants seek to prove that the plaintiff's selection for the search was made pursuant to an administrative plan containing specific neutral criteria. *See* Defs.' Mot. for Summ.J. at 29. Deciding whether the defendant OFCCP used neutral criteria is a factual determination. *See Mississippi Power,* 638 F.2d at 908. Thus, the court will overturn the agency's decision only if it is not supported by substantial evidence. *See Robinson,* 28 F.3d at 215 (holding that a court can overturn an agency's factual findings only if it is not supported by substantial evidence). The court holds that the proposed administrative search does not violate the Fourth Amendment because substantial evidence supports the agency's finding that the search was initi-

ated pursuant to a neutral administrative plan.

*General criteria used to create the CMR candidate list:* In determining whether a search is conducted according to neutral criteria, the court considers whether the search is "the product of the unreviewed discretion of the enforcement officer." *See Mississippi Power,* 638 F.2d at 907–908 (citing *See v. Seattle,* 387 U.S. 541, 545, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967)). The defendant OFCCP claims that it uses four criteria in order to choose a contractor for a compliance review. *See* Defs.' Mot. for Summ.J. at 9. Specifically, the agency claims that the local offices receive a randomized CMR candidate list of all companies that have: (1) identified themselves as a federal contractor; (2) maintained multiple establishments; (3) operated a corporate headquarters within that local office's jurisdiction and (4) employed 4,000 or more employees. *See* R. at 1023. The area directors for each office then remove companies from the list if they are out of business, the contract between the government and the company has been completed, the contract was not for enough money to qualify for a review, there is no evidence of the contract, the headquarters was reviewed in the last 2 years, the company is already reporting under a conciliation agreement or the company is a signatory to a consent decree. *See* R. at 709. Based on the record, the court holds that substantial evidence supports the Board's ruling that OFCCP uses neutral criteria to select a company for a compliance review.

*The actual selection process:* For a selection to be valid, an agency actually must apply the neutral criteria in making the specific contested selection. *See NOPSI,* 723 F.2d at 426–27. The plaintiff charges that: (1) the defendants did not meet their burden of showing that the OFCCP considered only the four factors listed above in creating the CMR candidate list and (2) the area director failed to follow the procedures. *See* Pl.'s Mot. for Summ.J. at 7–8. For the following rea-

sons, the court concludes that the agency's holding that the OFCCP followed its own neutral criteria is supported by substantial evidence.

The court rejects the plaintiff's first claim that the OFCCP used other factors in generating the list of candidates, because the Board's rejection of this theory was supported by substantial evidence. Specifically, the Board wrote:

> The testimony of Lawrence and Busch is more than sufficient for the A.L.J. and for us to determine that OFCCP's administrative plan for preparing the CMR listing was neutral. Lawrence and Busch each testified that the electronic tape received each year from the EEOC was used to generate the various lists of Federal contractors used by the OFCCP in carrying out its enforcement activities. R. at 1400–1402; R. at 1022–1023. To prepare the CMR listing for fiscal year 1998, Lawrence adjusted the computer program and policy divisions in the National Office. R. at 1433. He testified, and Busch confirmed, that the computer was programmed to sort the Federal contractors using the criteria listed in the OFCCP memorandum entitled Interim Selection Procedures for Corporate Management Reviews. R. at 1433–34, 1023–24, 707–10. Lawrence further testified that these were the only criteria used to produce the CMR listing. R. at 1434. Each year, after these adjustments were made to the computer data, Lawrence and his staff checked for accuracy by performing a test run, reviewing the results, and submitting the results to the divisions of program operations and policy for review and approval before the program was used. R. at 1434–35, 1426, 1424, 1429. These steps clearly show the neutrality of the plan used to produce the CMR listing.

R. at 1728. This circuit has held that in order to prove that a company was properly selected for a compliance review from a computerized list, the employees of the agency need only attest that the target of

the search was selected under the agency's normal procedures. *See National Eng'g & Contracting Co. v. OSHA,* 45 F.3d 476, 480 (D.C.Cir.1995). In *National Engineering,* the court stated, "[t]he absence of an encoded establishment list will only be fatal to [an agency's search] where the target company can make a factual showing that it was placed on the list for reasons other than the application of specific, neutral criteria." *Id.* (citing *Industrial Steel Prods. Co. v. OSHA,* 845 F.2d 1330, 1337 (5th Cir.1988)). In this case, the plaintiff has failed to show that any non-neutral criteria influenced the creation of the CMR candidate list.[9] Thus, the court holds that substantial evidence supports the Board's determination that the OFCCP created the CMR candidate list in a neutral manner.

The plaintiff's second claim is that Mr. Maltbia improperly skipped to the third name on the CMR candidate list. *See* Pl.'s Mot. for Summ.J. at 25. To prove its claim, the plaintiff believes it is entitled to the rejection reports and the CMR candidate list from which it was selected. *See id.* Although the Fifth Circuit has held this type of discovery was necessary in one case, *see Brock v. Gretna Mach. & Ironworks, Inc.,* 769 F.2d 1110, 1112 (5th Cir. 1985), this circuit has specifically rejected the holding in that case. *See National Eng'g,* 45 F.3d at 480. As discussed above, employees of the agency need only testify that they applied the proper neutral

administrative standard. *See id.* Thus, the Board was justified in holding that:

to the A.L.J.'s general credibility determination, we add our own, based upon our analysis of the testimony and the documentary evidence. Maltbia's testimony was clear and consistent with the documents presented. Moreover, a government official is presumed to be telling the truth when making a sworn statement. *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). We find no reason in the record to doubt that Maltbia did precisely what he testified to: relying on instructions contained in the Interim Selection Procedures for Corporate Management Reviews, he rejected the first two companies on the CMR list. Because [the plaintiff] did not qualify for rejection, Maltbia recommended that [the plaintiff]—the only company remaining on the Little Rock area list—be selected for the review. For these reasons we reject [the plaintiff's] challenges to Maltbia's testimony.

R. at 1731. This holding also is supported by the testimony of Ms. Joyce and Mr. Busch, two current OFCCP officials, who testified that Mr. Maltbia acted properly according to OFCCP guidelines. *See* R. at 930–31 (Joyce's testimony), 1026–27 (Busch's testimony).[10] The plaintiff does not obtain the right to go through the OFCCP's files based on an unsubstantiated belief that the agency's employees are not telling the truth.[11] Thus, the court

9. Specifically, the plaintiff alleged the entire health care industry was targeted based on the fact that the industry was targeted for other types of reviews in 1994 and 1996. *See Pl.'s Mot. for Sum.J.* at 22. However, the plaintiff failed to show the industry was targeted for CMR reviews in 1998 especially in light of the testimony that the computer codes were screened for outside considerations after 1996. R. at 1419. Thus, the plaintiff could not show a specific factor not identified by the OFCCP. Further, targeting an industry is not a non-neutral factor. *See Marshall,* 436 U.S. at 321, 98 S.Ct. 1816; *First Alabama,* 692 F.2d at 721.

10. As discussed in the defendants' Motion to Strike, Mr. Maltbia's actions also comply with the guidelines the OFCCP uses for this procedure. *See* Biermann Decl., Ex. B at 4.

11. The First Circuit requires sworn testimony that no other factors were considered. *See Donovan v. Wollaston Alloys, Inc.,* 695 F.2d 1, 6 (1st Cir.1982). The court did not require, however, that the witness review every line of the computer code used for selection. Therefore, the testimony stating that the computer program that created the CMR candidate list was tested meets the First Circuit's requirement. *See* R. at 1433–34 (Dep. of John Lawrence, II).

holds that substantial evidence supports the Board's determination that the plaintiff was properly selected from the CMR candidate list.

### c. Conclusion

The court holds that the defendant OFCCP's proposed administrative search satisfies the requirements for an administrative search. Accordingly, the court grants summary judgment for the defendants and denies the plaintiff's motion for summary judgment on the plaintiff's Fourth Amendment claims.

### 4. Fifth Amendment Claim

■ The plaintiff also claims that the OFCCP violated its Fifth Amendment Due Process rights. This contention is based on the A.L.J.'s denial of the plaintiff's request to: (1) discover the selection criteria for the CMR candidate list and the rejection forms, (2) order witnesses to produce documents, (3) require the production of the rejection forms Mr. Maltbia reviewed to prepare for the trial, (4) compel Mr. Maltbia to name the two companies he skipped on the list before choosing the plaintiff and (5) depose Mr. Solano and a reporter who interviewed him.[12] *See* Pl.'s Mot. for Summ.J. at 33–35. The court holds that the administrative hearing in this case complied with the minimum standards of due process · as required by the Fifth Amendment.

### a. Legal standard for Fifth Amendment claim

■ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). To establish an actionable due process claim, the plaintiff must show (1) it has a constitutionally protected life, liberty or property interest and (2) the procedures employed deprived the plaintiff of that interest without constitutionally adequate procedure. *See Propert v. D.C.,* 948 F.2d 1327, 1331 (D.C.Cir.1991); *Soeken v. Herman,* 35 F.Supp.2d 99, 104–105 (D.D.C. 1999).

#### (i) *Constitutionally protected interest*

■ It is undisputed by the parties that the plaintiff has a constitutionally protected privacy interest in protecting its files and property from an administrative search by the government. This right has been widely recognized by courts in this context. *See, e.g., New York v. Burger,* 482 U.S. 691, 699–700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987) ("An owner or operator of a business thus has an expectation of privacy in commercial property ... with respect to administrative inspections designed to enforce regulatory statutes."); *Marshall v. Barlow's,* 436 U.S. 307, 312–313, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978) (businesses have a privacy interest against government invasion to enforce regulatory standards). Accordingly, the court will proceed to deciding what type of process is required to protect the constitutionally recognized interests of the plaintiff.

#### (ii) *Required procedures under due process*

■ "Due Process is flexible and calls for such procedural protections as the particular situation demands." *Mathews,* 424 U.S. at 334, 96 S.Ct. 893 (citations omitted). To decide how much procedural protection is necessary, the court must balance three factors: (1) the strength of the plaintiff's privacy interest that will be affected by the official action; (2) the risk of an erroneous deprivation of the plaintiff's privacy interest under the disputed procedures and (3) the government's interest in

---

**12.** Plaintiff also charged that the OFCCP had no right to use expedited procedures after waiting eight months. However, the delay was due to a required attempt by the OFCCP to settle the dispute before filing an adminis-

trative complaint. *See* 41 C.F.R. § 60–1.20(b) ("Where deficiencies are found to exist, reasonable efforts shall be made to secure compliance through conciliation and persuasion.").

maintaining the procedures at issue, including avoiding the burden that additional procedures would place on its resources. *See Kropat v. FAA,* 162 F.3d 129, 132–33 (D.C.Cir.1998). After considering these factors, the court will hold that the expedited-hearing procedures did not deprive the plaintiff of due process.

■ ***Plaintiff's privacy interest:*** "The procedural protections required by Due Process must be determined with reference to the rights and interests at stake in the particular case." *Washington v. Harper,* 494 U.S. 210, 229, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). As discussed above, the plaintiff has a constitutionally protected privacy interest in protecting its property from an administrative document search and inspection of its facilities. The impact of this privacy interest on the balancing test, however, is reduced because the plaintiff had a diminished expectation of privacy for two reasons. First, the expectation of privacy in commercial property is lower than that in residential property. *See Minnesota v. Carter,* 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) ("An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home.") (citations omitted). Therefore, the plaintiff had a greater reason to expect that its property could be subject to an inspection. Second, the plaintiff's expectation of privacy is further diminished by the plaintiff's voluntarily choice to do business with the federal government. The requirement of compliance with affirmative action programs for government contractors "is so well known and well entrenched that anyone who does business with the government is held to that obligation." *See United States v. Mississippi Power & Light Co.,* 638 F.2d 899, 906 (5th Cir.1981); *see also First Alabama Bank of Montgomery v. Donovan,* 692 F.2d 714, 720–21 (11th Cir.1982). Specifically, the plaintiff by entering into a contract with the federal government has agreed to "furnish all information and reports required by Executive Order No. 11246 ... and [permit] access to his books, records, and accounts by the contracting agency." Exec. Order No. 11,-246 § 202(5), 30 Fed.Reg. 12319 (1965). The Secretary of Labor also has the power to investigate the practices of federal contractors. *See id.* § 206(a). Although the plaintiff's agreement to submit to compliance evaluations does not constitute a waiver of the plaintiff's privacy interest, it weakens the plaintiff's claim to an expectation of privacy. *See Dr. Pepper/Seven–Up Cos. v. FTC,* 991 F.2d 859, 863 (D.C.Cir. 1993) (a voluntary agreement weakens a claimant's expectation of privacy). Thus, the court will take into account only the weakened expectation of privacy that the plaintiff has in protecting its documents and property from an administrative inspection.

■ ***Risk of an erroneous deprivation without additional procedures:*** The plaintiff believes that there was a high risk of an erroneous deprivation of its privacy rights because it could not utilize all of the procedural rights that it would have in a trial. Specifically, the plaintiff points to the A.L.J.'s decision to limit document discovery, allegedly mistaken rulings during the trial and the denial of a request for a deposition. However, procedural due process in an administrative hearing does not always require all of the protections afforded a party in a judicial trial. *See Dixon v. Love,* 431 U.S. 105, 115, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977); *Kropat v. FAA,* 162 F.3d 129, 132 (D.C.Cir.1998); *Dorris v. FDIC,* 1994 WL 774535, *8 (D.D.C.1994). The court holds that the procedures that govern an expedited administrative hearing provided the plaintiff with adequate means to protect its privacy rights.

In a similar case, the D.C. Circuit held that an administrative procedure that banned certain types of discovery requests did not violate Due Process. *See Kropat,* 162 F.3d at 134. In *Kropat,* an FAA employee appealed an administrative rul-

ing in which he was suspended without pay for 10 days. *See id.* at 132. Under the procedures used, the FAA employee was denied the right to depose or interview the witnesses before the hearing. *See id.* at 133. However, the court stated that the Fifth Amendment "only requires that a person receive his due process, not every procedural device that he may claim or desire." *Id.* at 132 (citing *Johnson v. United States*, 628 F.2d 187, 194 (D.C.Cir. 1980)); *accord Blackman v. Busey*, 938 F.2d 659, 664 (6th Cir.1991). Thus, the court held that an administrative hearing meets the main requirements of due process where a party had the right to a neutral arbitrator, to be represented by counsel, to conduct cross-examination, present evidence and witnesses on its own behalf and rebut evidence submitted by the adverse party. *See id; see also Mathews*, 424 U.S. at 325 n. 4, 96 S.Ct. 893 (citing *Goldberg v. Kelly*, 397 U.S. 254, 266–71, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); *Flynn v. 3900 Watson Place, Inc.*, 63 F.Supp.2d 18, 24–25 (D.D.C.1999).

The plaintiff relies on *Housing Authority of County of King v. Pierce* to support its claim that a partial denial of discovery requests violates due process.[13] *See* 711 F.Supp. 19 (1989). In *Pierce*, however, the U.S. Department of Housing and Urban Development required a local housing authority to return what the agency had claimed as overpayments without a hearing or any form of discovery. *See id.* at 20. The court held that the denial of due process was caused by the agency's refusal to give information upon which its decision was based, not by the denial of discovery. *Compare id.* at 21 *with Dorris*, 1994 WL 774535 at *9 (complete bar on discovery was compatible with due process).

As in the cases discussed above, the plaintiff here contends that its inability to get all of its discovery demands constituted a violation of its due process rights. As

in *Kropat*, the plaintiff in the current case was afforded all of the procedures that this circuit requires for administrative hearings. Specifically, the plaintiff employed counsel, took depositions from and cross-examined the OFCCP officials involved in the plaintiff's selection for a CMR review, reviewed all documents considered by the agency in its decision and presented its own exhibits and witnesses to prove its case. *See* R. at 807–1100. Further, unlike the local housing board in *Pierce*, the plaintiff in the present dispute was given access to all information that the A.L.J. and the Board considered in making their rulings. Accordingly, the court finds that the use of expedited procedures did not greatly increase the risk of an erroneous deprivation of the plaintiff's privacy rights.

The plaintiff also contended that the A.L.J. should have forced Mr. Maltbia to name the two companies ahead of the plaintiff on the CMR candidate list. For the reasons discussed above, the court holds that the sworn testimony of Mr. Maltbia that he followed correct procedures was sufficient to justify the agency's decision that he acted appropriately in choosing the plaintiff from the list. Therefore, the A.L.J. was correct in holding that naming the companies ahead of the plaintiff on the list was not relevant to making his decision in this case. *See* R. at 901 (A.L.J.'s decision).

Finally, the plaintiff claims the A.L.J. erred in holding irrelevant the testimony of Solicitor of Labor Henry Solano and a reporter who interviewed him. *See* R. at 817 (A.L.J.'s decision). As discussed above, the court holds that the agency ruling that the selection process was non-discriminatory and applied neutrally was supported by substantial evidence. An A.L.J. does not have to force a senior agency official to testify if the testimony will only repeat information that was included with other evidence. *See Simplex*

---

**13.** The plaintiff also cites an administrative decision to support its contention that the A.L.J. violated due process. *See Boeing Co.,*

99 OFC 14 (1999), R. at 1705. For the reasons discussed above, the court finds that this decision does not support the plaintiff's claim.

*Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575, 586 (D.C.Cir.1985). Furthermore, a claimant must show how it was prejudiced by the denial of a specific discovery request in order to bring a Fifth Amendment claim for the denial of a specific discovery process. *See Kropat,* 162 F.3d at 133. Specifically, the plaintiff produced an article that includes an interview in which Mr. Solano stated that he intended to review the payroll data of companies for which the OFCCP had evidence of prior affirmative action violations. *See R.* at 775. This information is irrelevant for determining which criteria were used to select the plaintiff for a CMR review. After considering the documentation of the selection procedures in the record and the plaintiff's arguments, the court holds that the plaintiff has failed to explain how Mr. Solano's testimony would have affected the A.L.J.'s ruling. Thus, the court holds that the expedited hearing procedures did not greatly increase the risk of an erroneous deprivation of the plaintiff's privacy interest.

***Government interest in avoiding additional procedures:*** The final factor the court considers is the governmental interest in maintaining the current procedures, including the fiscal and administrative burdens imposed on the government by adding additional procedures. *See Mathews,* 424 U.S. at 334, 96 S.Ct. 893. The government has a strong interest in speedy enforcement of its affirmative action program to provide full equal employment opportunity. *See Uniroyal,* 482 F.Supp. at 372; *accord First Alabama Bank,* 692 F.2d at 720–21. The defendants contend that adding extra procedures would "severely undermine the federal government's interest in expeditious enforcement of the Executive Order and the Acts by allowing federal contractors to forestall compliance evaluations." *See* Defs.' Mot. for Summ.J. at 39. The plaintiff does not dispute this point. It is widely recognized that a drain on the government's limited resources in terms of time

and cost of enforcement is a major factor in the *Mathews* test. *See Mathews,* 424 U.S. at 348, 96 S.Ct. 893; *Reeve Aleutian Airways, Inc. v. United States,* 982 F.2d 594, 602 (D.C.Cir.1993). Accordingly, the court holds that the plaintiff's interest in protecting its privacy is insufficient to outweigh the strong governmental interest in speedy enforcement of its affirmative action programs.

**b. Conclusion**

After considering the three factors listed above, the court concludes that the OFCCP's expedited hearing process was adequate to protect the plaintiff's due process rights. Therefore, the court grants summary judgment to the defendants and denies the plaintiff's summary judgment motion on the plaintiff's Fifth Amendment claim.

**5. Procedural Claims**

The plaintiff also claims that the A.L.J. violated OFCCP regulations by depriving it of the opportunity to seek production of documents along with witnesses and not allowing more extensive discovery. *See* Pl.'s Mot. for Summ.J. at 32–33. For the reasons discussed below, the court holds that the agency proceedings did not violate any of the agency's regulations.

**a. Compelling witnesses to produce documents**

The plaintiff is correct in asserting that under normal hearing procedures, the plaintiff may require a witness to produce documents under the control of the OFCCP. *See* 41 C.F.R. § 60–30.17. Under expedited procedures, however, the only discovery devices allowed are admissions, the exchange of witness lists and depositions with the consent of the A.L.J. *See* 41 C.F.R. § 60–30.33. The plaintiff argues that this rule is tempered by a regulation which mandates that the plaintiff may present its case. *See* Pl.'s Mot. for Summ.J. at 33. This regulation, however, guarantees only that the plaintiff will be

allowed to present some evidence, make an argument to the Board and cross-examine witnesses. *See* 41 C.F.R. § 60–30.34. Thus, the court holds that the A.L.J.'s decision not to require the witnesses to bring documents did not violate any federal regulation.

### b. Denial of the plaintiff's discovery requests

The plaintiff's second argument, that the decision in *Boeing* requires an A.L.J. to permit discovery, is also without merit. *See* Pl.'s Mot. for Summ.J. at 32. The A.L.J. in *Boeing* held that 41 C.F.R. § 60–30.2 gives an A.L.J. discretion in deciding whether document production is appropriate. *See Boeing Co.,* 99 OFC 14 (1999), R. at 1706. Courts, however, can overturn an agency decision under the Administrative Procedure Act only if the decision is "without observance of procedure required by law." *See* 5 U.S.C. § 706(2)(D). The APA does not mandate that courts overturn an agency decision when an A.L.J. does not use his discretion under a federal regulation to help a party. Accordingly, the court rejects the plaintiff's second argument.

### c. Conclusion

The plaintiff has failed to identify a federal regulation that the agency violated by the procedures it employed or the decision it reached. For this reason, the court grants summary judgment to the defendants and denies the plaintiff's summary judgment motion on its claim that its procedural rights were violated.

### 6. Inclusion of Subsidiaries in the Sanction against the Plaintiff

The plaintiff's last objection to the agency decision is that the Final Order issued by the Department of Labor's Administrative Review Board sanctioned the plaintiff's subsidiaries in the event that the plaintiff did not comply with the order within 30 days. *See* Pl.'s Mot. for Summ.J. at 36–37. The defendants claim that the agency has the authority to sanction a company's subsidiaries when it punishes the parent company or, in the alternative, that the plaintiff and its subsidiaries are one entity. *See* Defs.' Mot. for Summ.J. at 41–43. The court recognizes that the determination of an appropriate remedy is a matter of administrative competence. *See Svalberg v. SEC,* 876 F.2d 181, 184 (D.C.Cir.1989). However, the agency's decision must be justified by the facts established by the record. *See id.* As discussed below, the court holds that there is insufficient evidence on the record to determine whether the plaintiff's subsidiaries may be sanctioned for the conduct of the parent company. Accordingly, the court will remand the case to the agency to decide whether the plaintiff and its subsidiaries may be sanctioned as one entity.

### a. The Board's holding

In its opinion, the Board rejected the plaintiff's objections to the sanctioning of its subsidiaries because "[a]ll subsidiaries of a covered contractor that have not received a facility waiver are included within the contract compliance provisions." R. at 1733 n. 10. Although this statement of the law is correct, *see Trinity Inds. v. Herman,* 173 F.3d 527, 530 (4th Cir.1999), it does not conclusively answer the plaintiff's objection. In *Trinity,* the court held that a contractor's subsidiaries must allow administrative searches under Executive Order 11,246 regardless of whether the subsidiary had contracted with the government. *See id.* In this case, the plaintiff does not contest that the defendant OFCCP has the right to conduct an administrative search of its subsidiaries if they are properly chosen for review. *See* R. at 1570 (plaintiff's companies had been successfully inspected in the past). Instead, the plaintiff challenges the agency's right to punish its subsidiaries for the actions of the parent company. Therefore, neither the decision in *Trinity* nor the Board's ruling answers the plaintiff's objection.

■ The relationship between a parent and subsidiary alone is not enough to render a subsidiary liable on a parent's contract. *See FMC Fin. Corp. v. Murphree, Jr.*, 632 F.2d 413, 422–23 (5th Cir.1980); *Manufacturers Life Ins. Co. v. Encore Marketing Int'l, Inc.*, 1993 WL 271499, *1 (N.D.Ill.1993). In deciding whether a subsidiary may be sanctioned for the actions of its parent company, the court must be careful not to bind parties to its ruling that have not had an opportunity to be heard.[14] *See United States v. Sun–Diamond Growers*, 138 F.3d 961, 977 (D.C.Cir.1998) (parties cannot be bound who have not been heard); *Local 300, Nat'l Postal Mail Handlers Union v. National Postal Mail Handlers Union*, 764 F.Supp. 199, 205 (D.D.C. 1991) (same). In order to comport with the requirements of Due Process, the court must first determine whether the plaintiff's subsidiaries may be considered the same entity as the plaintiff such that they were properly represented by the plaintiff in the agency proceeding.

### b. Standard for determining whether the plaintiff and its subsidiaries can be considered one entity

According to Executive Order 11,246, it is the responsibility of the Secretary of Labor to establish guidelines for determining whether a parent and subsidiary are to be considered as a single entity for the purpose of developing an affirmative action program. *See* Exec. Order No. 11,246 § 201, 30 Fed.Reg. 12319 (1965). The Secretary requires the agency to consider whether: (1) the parent and subsidiaries have common ownership, (2) the parent and subsidiaries have the same directors and/or officers, (3) the parent has *de facto* control of the subsidiary, (4) the personnel policies of the parent and the subsidiaries emanate from a common source and (5) the operations of the parent and the sub-

sidiaries are dependent on each other. *See* 52 Op.Comp.Gen. 145, 146 (1972) (Opinion letter from Comptroller General). In an analogous context, this circuit has established similar factors for deciding whether multiple companies can be considered a single entity. *See EEOC v. Saint Francis Xavier Parochial Sch.*, 117 F.3d 621, 625 (D.C.Cir.1997) (court must consider whether the companies have interrelation of operations, common management, centralized control of labor relations and common ownership or financial control). Therefore, the court holds that if the plaintiff and its subsidiaries are considered one entity under the five-factor test established by the Secretary of Labor, the subsidiaries would have been adequately represented by the plaintiff in the hearing. If the subsidiaries were adequately represented at the hearing, they may be punished by the sanction levied against the plaintiff.

### c. Conclusion

■ The record contains some evidence suggesting a close link between the plaintiff and its subsidiaries. *See* R. at 974–975 (plaintiff's vice president stating it owns and operates the subsidiaries); R. at 713–36 (contract includes both the plaintiff and its subsidiaries); R. at 834–36 (plaintiff and subsidiaries share a building). However, neither the Board nor the Administrative Law Judge made findings based on this evidence. Further, the evidence in the record is not sufficient to determine whether the plaintiff and its subsidiaries should be considered one entity. The agency must first resolve the facts surrounding the relationship between the plaintiff and its subsidiaries as well as balance the five factors listed above before it can issue its final order. *See NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 404, 80

---

14. The defendants argue that the plaintiff lacks standing to raise the complaints of its subsidiaries if they are independent. *See* Defs.' Reply at 23–24. However, as discussed below, the court holds that it cannot determine at this time whether the parent and subsidiaries are independent. Thus, this issue cannot be resolved until the agency makes its determination upon remand.

S.Ct. 441, 4 L.Ed.2d 400 (1960) (fact finder must first determine whether the multiple companies are one entity before issuing a judgment); *St. Francis,* 117 F.3d at 625–26 (same). Thus, the court remands this case to the agency with instructions to determine whether the plaintiff and its subsidiaries may be considered one entity for purposes of imposing a sanction on the plaintiff.

## C. MODIFICATION TO THE BOARD'S ORDER

The plaintiff requests that this court give it 30 days after the sanctions take effect so that it will have a chance to comply with the order. *See* Pl.'s Mot. for Summ.J. at 37. This request is consistent with the sanction's goal of compelling compliance. *See First Alabama Bank of Montgomery v. Donovan,* 692 F.2d 714, 722 (11th Cir.1982) (purpose of sanctions under E.O. 11,246 is to encourage compliance, not to punish). Therefore, the court holds that the defendants may not debar the plaintiff unless the plaintiff fails to comply with the Board's final order within 30 days from the date that the Board issues its final judgment.

## III. CONCLUSION

For the foregoing reasons, the court will grant the defendants' motion and deny the plaintiff's motion for summary judgment on the plaintiff's Fourth Amendment, Fifth Amendment and procedural claims. The court further holds that it lacks sufficient information to determine whether the plaintiff's subsidiaries may be punished for its failure to meet its obligations under Executive Order 11,246. Thus, the court will remand this case to the Administrative Law Board of the Department of Labor for proceedings consistent with this opinion. The court also modifies the remedy to allow the plaintiff 30 days after the Administrative Review Board's final decision to comply with its responsibilities under Executive Order 11,246 before it may be sanctioned. An Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 23 day of August 2000.